IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DEMODULATION, INC.<br><br>    Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>    Defendant. | 1:11-cv-236-SGB<br><br>Judge Thomas C. Wheeler |

**MOTION OF THE UNITED STATES TO
DISMISS THE FOURTH AND FIFTH COUNTS
IN DEMODULATION'S THIRD AMENDED COMPLAINT**

The United States hereby moves pursuant to RCFC 12(b)(1) to dismiss Counts Four and Five of the Third Amended Complaint, Docket No. 52 (Mar. 28, 2014) of Demodulation, Incorporated (Demodulation) for lack of subject matter jurisdiction.[1]  The Court lacks subject matter jurisdiction as to Count Four of the Complaint, claiming violation of the Fifth Amendment, for three reasons.  First, the Court's jurisdiction is limited to claims for "takings" under the Fifth Amendment, and therefore Demodulation's claims for "substantive and procedural due process provided by the Fifth Amendment and elsewhere in the Constitution" are not actionable in this Court.  Second, the exclusive remedy for the unauthorized manufacture or use a patented invention is 28 U.S.C. § 1498(a), which is the subject of Count Three of the Third Amended Complaint (¶¶ 79-86).  And Third, the claims for "misappropriation of trade secrets

---

[1] This motion renews the *Motion of The United States to Dismiss Demodulation's First, Second, Fourth & Fifth Causes of Action*, Docket No. 8 (Aug. 12, 2011) with respect to Counts Four and Five of the Third Amended Complaint.  Now that the United States has answered (Docket No. 54), Counts One and Two are appropriately addressed as a motion for summary judgment rather than a motion to dismiss.  Accordingly, the Government will file a separate motion with respect to Counts One and Two.

1

and other property described [in the Third Amended Complaint]," as alleged in paragraph 88 of the Complaint, sound in tort and therefore are not within the Court's jurisdiction. Paragraph 88 also alleges a theory of liability for use of a patented invention that is barred by long-standing Supreme Court precedent.

Finally, Demodulation's Count Five claiming misappropriation of trade secrets, is barred – like Count Four – because it sounds in tort and this Court has no jurisdiction over torts.

**I.    COUNT FOUR MUST BE DISMISSED FOR LACK OF SUBECT MATTER JURISDICTION**

Count Four of the Complaint asserts a cause of action for "violation of the Fifth Amendment." 3d Am. Compl. ¶¶ 87-89. This cause of action fails for two reasons. First, Demodulation's requests for damages due to alleged violations of "substantive and procedural due process" are not within the Court's jurisdiction. Second, trade secret misappropriation and patent infringement are torts that are specifically excluded from the scope of 28 U.S.C. §1491, this Court's jurisdictional statute for claims based on the Constitution.

**A.    THE COURT LACKS JURISDICTION AS TO DEMODULATION'S CLAIM FOR VIOLATION OF "SUBSTANTIVE AND PROCEDURAL DUE PROCESS PROVIDED BY THE FIFTH AMENDMENT AND ELSEWHERE IN THE CONSTITUTION"**

Demodulation asserts "[t]he United States misappropriation of trade secrets and other property described above and its infringement of Demodulation's patents constitutes a violation of the Constitutional guarantees of substantive and procedural due process provided by the Fifth Amendment and elsewhere in the Constitution[2]." Compl., ¶ 88. Demodulation further asserts

---

[2] We presume that "elsewhere in the Constitution" refers to the Fourteenth Amendment, the only other provision relating to "due process." The Fourteen Amendment provides: "[N]or

that "[t]hese actions also constitute a taking by the Government for which Demodulation is entitled to just compensation." Compl., ¶ 62. In neither instance does Demodulation point to particular facts that support its allegations.

For Demodulation's "due process" claims to be heard in the Court of Federal Claims, those claims must be within 28 U.S.C. § 1491. As pertinent here, section 1491 states that the "Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded … upon the Constitution … for liquidated or unliquidated damages in cases not sounding in tort." As indicated by section 1491's limitation to claims "for liquidated or unliquidated damages," the Court's jurisdiction to hear Constitutional claims is limited to provisions "mandating compensation by the Federal Government for the damage sustained." *United States v. Testan*, 424 U.S. 392, 398 (1976) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d, at 1008, 1009 (Ct. Cl. 1967)[3] (internal quotes omitted); *see also Mullenberg v. United States*, 857 F.2d 770, 772-73 (Fed. Cir. 1988) (citing *Testan*); *Carruth v. United States*, 627 F.2d 1068, 1081 (Ct. Cl. 1980). The Federal Circuit has found that this Court lacks jurisdiction over claims based on the due process clauses of the Fifth and Fourteenth Amendments because those clauses do not mandate the payment of money. *LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed. Cir. 1995). To be within the jurisdiction of the Court of Federal Claims, the claim must seek the payment of money owed or wrongfully withheld as a matter of right.

---

shall any State deprive any person of life, liberty, or property, without due process of law." Const., Amend. XIV §1. That provision, of course, does not apply to actions of the Federal Government.

[3] Decisions of the Court of Claims are binding precedent of the Court of Appeals for the Federal Circuit, unless overruled. *See South Corp. v. United States*, 690 F.2d 1368, 1369-371 (Fed. Cir. 1982) (*en banc*).

Demodulation's second contention alleges that "[t]hese actions [(presumably, the acts allegedly in violation of procedural and substantive due process)] also constitute a taking by the Government for which Demodulation is entitled to just compensation." Compl., ¶ 62.  Reduced to its essence, Demodulation contends that the violations of the due process clause[4] can somehow transmogrify into a "taking"[5] of private property for the public use.  Demodulation has not explained how this could occur and certainly has not presented facts that would sustain such a claim.

"[T]he Tucker Act does not create any substantive right enforceable against the United States for money damages, but creates jurisdiction in the Court of Federal Claims. *See United States v. Mitchell*, 463 U.S. 206, 216 (1983); *United States v. Testan,* 424 U.S. 392, 398 (1976).  A substantive right must be found in some other source of law. *Mitchell*, 463 U.S. at 216; *Testan*, 424 U.S. at 398.  And, waivers of sovereign immunity "cannot be implied but must be unequivocally expressed," *Testan*, 424 U.S. at 399 (quoting *Sherwood v. United States*, 312 U.S. 584, 586 (1941)).

A Tucker Act "claimant must demonstrate that the substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Mitchell*, 463 U.S. at 216-17 (quoting *Testan*, 424 U.S. at 400, quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (1967)).  The Court of Claims, predecessor to

---

[4] Constitution, Amend. V ("No person shall be … deprived of life, liberty or property, without due process of law ….").

[5] Constitution, Amend. V ("[N]or shall private property be taken for public use, without just compensation").

the Federal Circuit, identified two classes of money-mandating claims, other than contractual claims:

> [I]t is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money. Within that sphere, the non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury. In the first group (where money or property has been paid or taken), the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation. In the second group, where no such payment has been made, the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum.

*Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967). Demodulation Count Four does not fall into any of these established categories.

Demodulation's claims that it was denied "the Constitutional guarantees of substantive and procedural due process." Third Amended Complaint, ¶ 88. But "the due process clause of the Constitution is not a money-mandating provision." *Golden Pac. Bancorp v. United States*, 15 F.3d 1066, 1076 (Fed. Cir. 1994) (citing *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989) (the due process clause "standing alone, cannot be ... interpreted to command the payment of money")). In *Golden Pacific Bancorp*, the claimant argued that "in declaring the Bank insolvent and placing it in FDIC receivership, the Comptroller 'reneged' on a prior commitment to value [certain liabilities] in determining bank solvency, and that the closure of the 'solvent' Bank without shareholder compensation failed to advance a legitimate government purpose and deprived Golden Pacific of its property within the meaning of the Fifth Amendment." 15 F.3d at 1072-73. Addressing this argument, the Federal Circuit concluded:

> Golden Pacific's final argument – that the Comptroller closed a solvent Bank and therefore failed to advance a legitimate government interest – requires little

> discussion. Golden Pacific is arguing that the Comptroller "made a mistake" when he closed the Bank and that therefore compensation is due under the Fifth Amendment. … [A] mistake may give rise to a due process claim, but not a taking claim. And the due process clause of the Constitution is not a money-mandating provision. Such a money-mandating provision is required for a suit, such as this, under the Tucker Act.

15 F.3d at 1075-76 (citations omitted).

The Federal Circuit also addressed a similar claim in *United States v. Connolly*, 716 F.2d 882, 886-87 (1983) (*en banc*), *cert. denied*, 465 U.S. 1065 (1984). In that case, Connolly's claimed that he had been wrongly removed as a probationary postal clerk in retaliation for exercising his First Amendment speech rights. 716 F.2d at 883-84. The Claims Court had held that it lacked jurisdiction under the employment statutes because Connolly was a probationary employee, but that it did have jurisdiction under the Tucker Act based on the First Amendment claim. 716 F.2d at 885-86. Thus, Connolly was asserting that the violation of his First Amendment rights resulted in the taking of property, presumably his job. The *Connolly* court rejected that argument:

> We agree with the Court of Claims that the first amendment, standing alone, cannot be so interpreted to command the payment of money. Like the due process clause of the fifth amendment, the literal terms of the first amendment neither explicitly nor implicitly obligate the federal government to pay damages. That amendment merely forbids Congress from enacting certain types of laws; it does not provide persons aggrieved by governmental action with an action for damages in the absence of some other jurisdictional basis.

716 F.2d at 887 (citations and reference omitted).

Nor can Demodulation create jurisdiction for its " substantive and procedural due process" claim by bootstrapping it to the Fifth Amendment as it attempts to do. 3d Am. Compl. ¶ 88 ("These actions also constitute a taking … for which Demodulation is entitled to just compensation."). Since, the Supreme Court has long recognized that the "takings" clause of the Fifth Amendment is self-executing, s*ee Testan*, 424 U.S. at 401, permitting a claimant to assert

6

that a provision of law that is not money-mandating in combination with the Fifth Amendment to produce a money-mandating claim, would do violence to the limited jurisdiction of this Court as intended by Congress.  Since virtually any act of the Government could affect some real or personal property interest in some remote manner, bootstrapping a non-money-mandating provision to the Fifth Amendment would result in jurisdiction in every conceivable matter .

But no court has gone that far.  Certainly, the Supreme Court has not.  In *Testan*, the government employee claimants sought compensation for lost pay based on the improper classification of their jobs.  424 U.S. at 393.  Finding no provision that permitted back pay, the Court held that the claimant were without a remedy in the Court of Claims.  424 U.S. at 400.  The Court went on to note that "[i]n a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and we regard as unsound the argument … that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation."  424 U.S. at 400-01.  Nor have the courts of appeal recognized a Tucker Act claim based on the due process clause.  *Golden Pac. Bancorp*, 15 F.3d at 1076; *Empire Kosher Poultry, Inc. v. Hallowell*, 816 F.2d 907, 912 (3d Cir. 1987).  ("United States has not … consented in the Tucker Act to suits predicated upon the substantive due process or equal protection components of the fifth amendment."); *accord De Vilbiss v. SBA,* 661 F.2d 716, 718 (8th Cir.1981); *Radin v. United States*, 699 F.2d 681, 685 n.8 (4th Cir. 1983) ("it is well settled that there is no Tucker Act jurisdiction over a claim founded solely on a fifth amendment procedural due process claim").

And this Court has likewise refused to find jurisdiction based on the due process assertions.  The Court's statement in *House v. United States*, 14 Cl. Ct. 32, 37-38 (1987) (Bruggink, J.) is particularly apropos to the current case:

7

> The fact that there is no contract, statute, or regulation that plaintiffs can rely on to give them a right to relief should be conclusive. Their complaint, however, also contains a claim for relief under the due process clause of the fifth amendment of the Constitution. The precise basis of the plaintiffs' argument is not clearly articulated. To the extent it is a generalized assertion of procedural rights under the due process clause, however, it is not reviewable here. We have no jurisdiction founded solely upon that provision.

(citations omitted).

### B. PATENT INFRINGEMENT CANNOT BE ASSERTED AS A FIFTH AMENDMENT CLAIM

The Supreme Court's decision in *Schillinger v. United States*, 155 U.S. 163 (1894) forecloses this Court's assumption of jurisdiction over Demodulation's Count Four that claims patent infringement as a Fifth Amendment "taking." *Schillinger* held that patent infringement was a "tort, pure and simple" and therefore specifically excluded by the Tucker Act's prohibition on "cases sounding in tort." 155 U.S. at 169; *cf*. 28 U.S.C. § 1491(a)(1) (current codification of Tucker Act).

Demodulation's allegations at paragraphs 87 through 89 of the Third Amended Complaint, that the alleged infringement of its patent constituted a taking of property is baseless. The controlling *Schillinger* decision of the Supreme Court precludes Demodulation's claim. And, of course, any claim for unauthorized manufacture or use of a patented invention is adequately redressed under section 1498(a).

### C. MISAPPROPRIATION OF TRADE SECRETS CANNOT BE ASSERTED AS A FIFTH AMENDMENT CLAIM

The owner of a trade secret has a property interest in that trade secret. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-04 (1984). But misappropriation of a trade secret is a tort. *Radioptics, Inc. v. United States*, 621 F.2d 1113, 1130 (Ct. Cl. 1980) (per curiam). Accordingly,

the Court of Federal Claims lacks jurisdiction over claims of misappropriation of trade secrets. *Id.* (discussing the Court of Claims, predecessor to the Court of Federal Claims, and citing *Schillinger*). As *Radioptics* makes clear, misappropriation of trade secrets is subject to *Schillerger*'s holding that the Tucker Act does not permit recovery of "cases sounding in tort" under a theory of a Constitutional "taking."

In light of *Radioptics* and *Schillinger*, Demodulation's claims for damages in paragraphs 87 through 89 for a "taking" of Demodulation's "trade secret" and unspecified other property are baseless and must be dismissed.

## IV. COUNT FIVE MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Count Five asserts a claim for misappropriation of trade secrets. As noted above, misappropriation of a trade secret is a tort. *Radioptics*, 621 F.2d at 1130 ("misappropriation of a trade secret sounds in tort and is cognizable … only under the Federal Tort Claims Act," citing *Schillinger*). Section 1491 specifically excludes "cases sounding in tort" from the jurisdiction of the Court of Federal Claims. *Keene Corp. v. United States*, 508 U.S. 200, 214 (1993) ("tort cases are outside the jurisdiction of the Court of Federal Claims"); *Brown v. United States,* 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims ... lacks jurisdiction over tort actions against the United States."). Accordingly, the Court of Federal Claims lacks jurisdiction over claims of misappropriation of trade secrets.

Finally, *Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002) does help Demodulation. In that case, the Federal Circuit recognized that "[m]any breaches of contract can also be treated as torts." But as the *Awad* court made clear, the rule pronounced in that case is narrow: the Court of Federal Claims will have jurisdiction over the "tort" as a contract claim,

9

but only where "the 'tort' complained of is based entirely upon breach by the government of a promise made by it in a contract so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim." *Id.* And, importantly, the claim still must be one in contract, not as misappropriation of a trade secret.

As demonstrated above, binding precedent holds that this Court lacks jurisdiction over claims of trade secret misappropriation. Demodulation provides no other basis for this Court to have jurisdiction over the trade secret misappropriation claim. Accordingly, Count Five must be dismissed.

## V. CONCLUSION

For the reasons stated, Demodulation's Fourth and Fifth causes of action must be dismissed for lack of jurisdiction.

                                        Respectfully submitted,
                                        STUART D. DELERY
                                        Assistant Attorney General

                                        JOHN FARGO
                                        Director

                                        *s/Gary L. Hausken*
                                        GARY L. HAUSKEN
                                        Assistant Director
                                        Commercial Litigation Branch
                                        Civil Division
                                        Department of Justice
                                        Washington, D. C.  20530
                                        Telephone:    (202) 307-0342
                                        Facsimile:    (202) 307-0345

May 20, 2014