# In the United States Court of Federal Claims

No. 11-236C

(Filed: August 29, 2014)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DEMODULATION, INC., | \* |
| Plaintiff, | \* Patent Infringement Case; RCFC |
| | \* 12(b)(1) Motion to Dismiss for |
| v. | \* Lack of Subject Matter |
| | \* Jurisdiction; RCFC 56(a) Motion |
| THE UNITED STATES, | \* for Summary Judgment. |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Benjamin D. Light*, Law Office of Sean R. Callagy, LLC, Paramus, New Jersey, for Plaintiff.

*Gary L. Hausken*, Assistant Director, with whom were *Stuart F. Delery*, Assistant Attorney General, *John Fargo*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

### Background

On April 14, 2011, Plaintiff Demodulation, Inc. ("Demodulation") filed suit in this Court alleging that the Department of Energy and the National Nuclear Security Administration, among others, stole proprietary technology, intellectual property, and trade secrets.[1]  At issue is a highly specialized material consisting of glass-coated amorphous metal filament known as microwire.  The diameter of the microwire is thinner than that of a human hair and can easily be hidden in a variety of products.  Plaintiff seeks $50 million from the Government for allegedly taking Demodulation's research.

---

[1] The Clerk's Office of the Court transferred the case to Judge Wheeler on August 26, 2013.

On March 28, 2014, Plaintiff filed a third amended complaint containing five counts. Count I alleges that the Government breached express contracts to maintain in confidence certain of Demodulation's proprietary technology, intellectual property, and trade secrets. 3d Am. Compl. ¶¶ 62-73. Count II alleges that the Government breached an "implied in fact" contractual agreement to maintain Demodulation's trade secrets in confidence. Id. ¶¶ 74-78. Count III alleges that the Government infringed on patents held by Demodulation in violation of 28 U.S.C. § 1498. Id. ¶¶ 79-86. Count IV alleges that the Government violated the Fifth Amendment by misappropriating Demodulation's trade secrets and intellectual property. Id. ¶¶ 87-89. Count V alleges that the Government unlawfully misappropriated Plaintiff's trade secrets. Id. ¶¶ 90-94.

On May 9, 2014, the Government filed a motion for partial summary judgment, with respect to Count III, pursuant to Rule 56(a) of the Rules of the United States Court of Federal Claims ("RCFC"). On May 20, 2014, the Government moved to dismiss Counts IV and V for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Both of these motions have been fully briefed and are ready for decision. The Court deems oral argument unnecessary.

## Defendant's Motion to Dismiss

A. Standard for Decision

Subject matter jurisdiction is a threshold issue to be considered before proceeding to the merits of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). In reviewing a motion to dismiss, the Court must accept the allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. Ainslie v. United States, 355 F.3d 1371, 1373 (Fed. Cir. 2004). Where subject matter jurisdiction is challenged, the plaintiff must establish the Court's jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

This Court's jurisdiction is established by the Tucker Act. 28 U.S.C. § 1491 (2006). To invoke jurisdiction under the Tucker Act, a plaintiff must point to a substantive right to money damages against the United States. Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir. 1995). Such a claim can be founded upon "the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." § 1491. If subject matter jurisdiction is lacking, the Court must dismiss the action. RCFC 12(h)(3).

B. <u>Analysis</u>

The Government argues that the Court lacks subject matter jurisdiction over Counts IV and V. For the reasons set forth below, the Government's motion is granted in part and denied in part.

1. <u>The Court Lacks Jurisdiction over Fifth Amendment Due Process Claims.</u>

The Government argues that Count IV should be dismissed because the Court lacks jurisdiction over claims for substantive and procedural due process provided by the Fifth Amendment. The Government is correct that the Court's Fifth Amendment jurisdiction is limited to claims for takings. The Federal Circuit has held that this Court lacks jurisdiction over claims based on the due process clauses of the Fifth and Fourteenth Amendments because those clauses do not mandate the payment of money. <u>LeBlanc v. United States</u>, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Demodulation's claims for due process under the Fifth Amendment are not actionable in this Court. To the extent the claim arises out of the due process clause of the Fifth Amendment, the motion to dismiss Count IV is GRANTED.

Count IV is saved in part, however, by the last line of paragraph 88 which reads as follows:

> The Government's misappropriation of Demodulation's trade secrets and other property described above and its infringement of Demodulation's patents constitutes a violation of the Constitutional guarantees of substantive and procedural due process provided by the Fifth Amendment and elsewhere in the Constitution. *These actions also constitute a taking by the Government for which Demodulation is entitled to just compensation.*

3d Am. Compl. ¶ 88 (emphasis added). The following two subsections address the remainder of Count IV.

2. <u>The Court Lacks Jurisdiction over Patent Infringement Claims Asserted as a Fifth Amendment Taking.</u>

Count IV is dismissed to the extent that Plaintiff attempts to fashion its patent infringement claim as a Fifth Amendment takings claim. The Court lacks Tucker Act jurisdiction over patent infringement claims under a takings theory. <u>Schillinger v. United States</u>, 155 U.S. 163, 169 (1894). A patent infringement claim is a tort claim and

therefore is excluded by the Tucker Act's prohibition on "cases sounding in tort". Id. The only way to bring a patent infringement claim in this Court is to assert the claim under 28 U.S.C. § 1498(a), which is the subject of Count III. Thus, to the extent the complaint asserts the alleged patent infringement as a Fifth Amendment taking violation, the motion to dismiss Count IV is GRANTED.

> 3. The Court has Jurisdiction over the Misappropriation of Trade Secrets Asserted as a Fifth Amendment Taking.

As a general rule, the misappropriation of a trade secret is a tort, and the Court lacks jurisdiction to hear such a claim. Radioptics, Inc. v. United States, 621 F.2d 1113, 1130 (Ct. Cl. 1980). However, in certain circumstances, the misappropriation of a trade secret can be categorized as a governmental taking. Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984). Under the Federal Circuit's takings jurisprudence, the distinction between a tort and a taking turns on whether the governmental action was authorized. Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998); see also Rith Energy, Inc. v. United States, 247 F.3d 1355, 1365 (Fed. Cir. 2001). If the action was committed by a government agent acting *ultra vires* the action would be considered a tort. If the action was chargeable to the government as an authorized action it would be a taking.

In considering a motion to dismiss under RCFC 12(b)(1), the Court must draw every inference in Plaintiff's favor. Here, Plaintiff alleges that an employee of the Defense Advanced Research Projects Agency advised Demodulation that "the government had a right to take Demodulation's technology." 3d Am. Compl. ¶ 59. This statement suggests that government employees were acting within the scope of their duties and had the requisite authorization. Such an allegation is sufficient to show that the governmental actors believed they were acting within the scope of their authority. Accordingly, the Government's motion to dismiss the misappropriation of trade secrets as a Fifth Amendment taking is DENIED.

> 4. The Court has Jurisdiction over the Misappropriation of Trade Secrets to the Extent the Claims Arise from Agreements with the Government.

The misappropriation of trade secrets claim survives to the extent the claim arises from an agreement with the Government. The misappropriation of trade secrets is generally classified as a tort, thus putting this type of claim outside of the Court's jurisdiction. However, if a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract. Awad v. United States, 301 F.3d 1367, 1372 (Fed. Cir. 2002). Put another way, if a contractual relationship exists, the Court's Tucker Act

jurisdiction is not foreclosed by the fact that the alleged breach also is tortious.  Wood v. United States, 961 F.2d 195, 198 (Fed. Cir. 1992).

Here, Demodulation alleges that a contract existed between Plaintiff and the Government, and that the misappropriation of trade secrets is based on this contractual duty.  Specifically, Plaintiff argues that "The Government is using or has used those trade secrets in violation of its agreements with Demodulation."  3d Am. Compl. ¶ 93. The Court must draw every inference in Plaintiff's favor at this stage and the Government's motion to dismiss Count V is DENIED.

## Defendant's Motion for Summary Judgment

### A. Standard for Decision

Summary judgment on a claim, or part of a claim, is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine only if it "may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). The moving party bears the burden of identifying specific portions of the record that demonstrate the absence of a factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  However, where the nonmovant bears the burden of proof at trial, the movant can satisfy its burden at the summary judgment stage by identifying an absence of evidence supporting an essential element of the nonmovant's case.  Id. at 322-23.

### B. Analysis

In this case, the Government argues that partial summary judgment should be granted with respect to Count III because there is an absence of evidence supporting part of Demodulation's patent infringement claims under 28 U.S.C. § 1498. The Government presents two distinct arguments: (1) that twelve of the thirteen asserted patents have expired, and patents that no longer exist cannot be infringed; and (2) that the remaining patent is not owned by Demodulation, and a lack of ownership precludes the right to recover for patent infringement.  For the reasons set forth below, the Government's motion is granted.

#### 1. Undisputed Facts

The Government has provided public records of the U.S. Patent and Trademark Office ("PTO"), and has requested the Court to take judicial notice of the adjudicative

5

facts contained therein. Because the accuracy of the PTO records cannot reasonably be questioned, see Fed. R. Evid. 201, the Court takes judicial notice of the following facts:

- Patent No. 5,557,085 (the "'085" patent) was issued on September 17, 1996, from Application No. 08/256,487, which claimed priority to a 1992 Swedish application.
- Patent No. 5,576,693 (the "'693" patent) was issued on November 19, 1996, from Application No. 08/256,483, which claimed priority to a 1992 Swedish application.
- Patent No. 6,018,297 (the "'297" patent) was issued on January 25, 2000, from Application No. 08/737,761, and expired for non-payment of maintenance fees on January 25, 2012.
- Patent No. 6,137,411 (the "'411" patent) was issued on October 24, 2000, from Application No. 09/125,131, and expired for non-payment of maintenance fees on October 24, 2012.
- Patent No. 6,225,905 (the "'905" patent) was issued on May 1, 2000, from Application No. 09/125,134, and expired for non-payment of maintenance fees on May 1, 2013.
- Patent No. 6,232,879 (the "'879" patent) was issued on May 15, 2001, from Application No. 09/367,554, and expired for non-payment of maintenance fees on May 15, 2013.
- Patent No. 6,417,771 (the "'771" patent) was issued on July 9, 2002, from Application No. 09/719,480, and expired for non-payment of maintenance fees on July 9, 2010.
- Patent No. 7,071,417 (the "'417" patent) was issued on July 4, 2006, from Application No. 10/972,549 and expired for non-payment of maintenance fees on July 4, 2010.
- Patent No. 7,075,439 (the "'439" patent) was issued on July 11, 2006, from Application No. 10/265,136 and expired for non-payment of maintenance fees on July 11, 2010.
- Patent No. 7,233,249 (the "'249" patent) was issued on June 19, 2007, from Application No. 10/935,258 and expired for non-payment of maintenance fees on June 19, 2011.
- Patent No. 7,354,645 (the "'645" patent) was issued on April 8, 2008, from Application No. 10/746,784 and expired for non-payment of maintenance fees on April 8, 2012.
- Patent No. 7,368,166 (the "'166" patent) was issued on May 7, 2008 from Application No. 11/098,052 and expired for non-payment of maintenance fees on May 7, 2012.

- The entire right, title and interest in U.S. Patent Application No. 09/101,006 was assigned by Horia Chiriac, Firuta Barariu, Adrian Tibor Ovari, and Gheorghe Pop to the Institutul de Fizica Tehnica on June 12, 1998. That Application was subsequently issued as U.S. Patent No. 6,270,591 (the "'591" patent) on August 7, 2001.

In addition, pursuant to 35 U.S.C. § 154, the Government calculates that the statutory term of the '085 patent expired on September 17, 2013, and the statutory term of the '693 patent expired on November 19, 2013. Dkt. No. 55 at 11-14. As with the other patents listed above, Demodulation concedes the accuracy of the stated expiration dates. Dkt. No. 64 at 6-7. Therefore, the Court recognizes the respective expiration dates of all twelve expired patents as undisputed.

2. The Government is Not Liable for the Use of Patents after Their Expiration.

Because the expiration of twelve of the thirteen patents at issue is not in dispute, the only question is whether the Government is liable for any acts that allegedly infringed those patents after their respective expiration dates. The answer to that question is simple and straightforward. "An invention claimed in a patent passes into the public domain upon termination of the patent's . . . term. Because the rights flowing from a patent exist only for the term of the patent, there can be no infringement once the patent expires." Kearns v. Chrysler Corp., 32 F.3d 1541, 1550 (Fed. Cir. 1994).

Consequently, the Government's motion for partial summary judgment is GRANTED to the extent that Demodulation cannot seek recovery for post-expiration use of its patents, and Demodulation's claims under Count III are limited to the alleged pre-expiration use of its patents.

3. Demodulation Cannot Maintain a Claim for Patent Infringement Unless It is the Equitable Owner of the Patent.

In order to bring a claim for patent infringement under § 1498(a), the plaintiff must be the "owner" of the patent. Here it is undisputed that the record owner of the '591 patent is the Institutul de Fizica Tehnica ("Institute"), located in Iasi, Romania. It is also undisputed that Demodulation's rights with respect to the '591 patent derive from its April 10, 2002 license agreement ("Agreement") with the Institute. Thus, because the meaning of "owner" in § 1498(a) is not limited to the holder of record title, but also "includes the equitable owner of the patent," Heinemann v. United States, 620 F.2d 874, 877 (Ct. Cl. 1980), the issue is whether the Agreement affords Demodulation such status.

Patent license agreements are governed by the ordinary principles of contract law. McCoy v. Mitsuboshi Cutlery, Inc., 67 F.3d 917, 920 (Fed. Cir. 1995). Contract interpretation begins with the language of the written agreement. TEG-Paradigm Envtl., Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006). Where, as here, that language is clear and unambiguous, "it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions." Id. at 1338 (quoting Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc)).

The key to determining a party's ability to bring a patent infringement suit in its own name "is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license." AsymmetRx, Inc. v. Biocare Med., LLC, 582 F.3d 1314, 1319 (Fed. Cir. 2009). "[A] bare licensee, who has no right to exclude others from making, using, or selling the licensed products, has no legally recognized interest that entitles it to bring or join an infringement action." Abbott Labs. v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir. 1995). However, where an exclusive license transfers all substantial rights in the patent, the exclusive licensee alone has standing to sue for patent infringement. Alfred E. Mann Found. for Scientific Research v. Cochlear Corp., 604 F.3d 1354, 1359 (Fed. Cir. 2010).

A review of the Agreement reveals significantly less than a transfer of "all substantial rights." For example, the scope of Demodulation's right to grant sublicenses is limited to certain related entities, Agreement ¶ 12.1; the definition of "licensed patent" specifically excludes patents and patent applications containing new matter, id. art. I; the Institute reserves the right to make and use the invention claimed in the '591 patent, and to have others make and use the invention on its behalf, id. ¶ 2.2; and the Institute may terminate the license if Demodulation fails to achieve and maintain practical application of the licensed invention, fails to reduce to practice the invention, or fails to submit required royalties and reports, id. ¶ 9.5, or if Demodulation becomes insolvent, id. ¶ 9.6. In sum, the weight of these provisions falls heavily on the side of finding a "mere license," rather than an assignment.

Most importantly, although the Agreement contains an integration clause, see id. ¶ 17.1, it does not grant Demodulation the right to sue for infringement. Generally, "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration" in determining whether all substantial rights were transferred to the licensee. Alfred E. Mann, 604 F.3d at 1361. In this case, the ordinary principles of contract law indicate that the Institute retained the right to bring suit, see Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir. 1998) (assuming the retention of rights not explicitly transferred), and therefore Demodulation did not obtain that right, see

Alfred E. Mann, 604 F.3d at 1360 (stating that if the licensor may sue, the licensee alone may not).

Although Demodulation argues that it obtained all significant rights to the '591 patent, it does not cite any contract provisions to support that argument. Instead, Demodulation asserts only that "[a]s explained in the Declaration of James O'Keefe, Jr., it is clear that at this point the Court must find that Demodulation acquired all the 'significant rights' to the '591 patent." Dkt. No. 64 at 11. However, the plain language of the Agreement belies that assertion. Accordingly, the Government's motion for partial summary judgment regarding U.S. Patent No. 6,270,591 is GRANTED.

## CONCLUSION

As set forth above, the Government's motion to dismiss Counts IV and V is GRANTED in part and DENIED in part. The Government's motion for partial summary judgment, with respect to Count III, is GRANTED. Pursuant to RCFC 12(a)(4)(A), counsel for the Government shall file an answer to the remaining portions of the complaint within fourteen days of this order, on or before September 12, 2014.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge