# In the United States Court of Federal Claims

No. 11-236C

(Filed: August 13, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| DEMODULATION, INC., | * Patent Infringement Case; Rule 37 |
|  | * Sanctions; Dismissal of Trade |
| Plaintiff, | * Secret Claims; Reasonable Costs |
|  | * and Attorneys' Fees under 28 |
| v. | * U.S.C. § 1927; Protective Order |
|  | * Violations; End of Fact Discovery |
| THE UNITED STATES, | * Period; Rule 59 Motion for |
|  | * Reconsideration. |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Sean R. Callagy*, with whom was *Samuel S. Saltman*, Callagy Law, P.C., Paramus, New Jersey, for Plaintiff.[1]

*Gary L. Hausken*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *John Fargo*, Director, and *Alice Suh Jou*, Of Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER CONFIRMING AUGUST 10, 2015
BENCH RULINGS ON OUTSTANDING MOTIONS

WHEELER, Judge.

Plaintiff Demodulation, Inc. ("Demodulation") filed a complaint in this Court on April 14, 2011 alleging patent infringement, breach of contract, and misappropriation of trade secrets by the United States. The claims at issue involve amorphous microwire, the

---

[1] Benjamin D. Light, formerly of Callagy Law, P.C, was the original attorney of record for Plaintiff in this case. Most of the violations of court orders and discovery misconduct described herein were the result of Mr. Light's actions. Mr. Light left the Callagy law firm on June 12, 2015. On June 16, 2015, Plaintiff substituted Sean Callagy as attorney of record. Mr. Callagy and his associate, Samuel Saltman, filed all of Plaintiff's motions and pleadings since June 16, 2015. However, as of the date of this decision, the Callagy law firm no longer represents Plaintiff. On August 7, 2015, Plaintiff filed a motion to substitute new counsel, which is currently pending because the proposed counsel is not yet admitted to the Court's bar.

diameter of which is thinner than a human hair, and electronic article surveillance technology that uses microwire. Before the litigation ensued, Demodulation held twelve patents for various applications of microwire, all of which have now expired. The decision here primarily concerns events that occurred during fact discovery, and confirms the bases for the Court's rulings on eight outstanding motions during a recent August 10, 2015 hearing.

The events in this case that led up to the August 10, 2015 hearing and this decision began in October 2014. On October 2, 2014, Demodulation filed a motion to compel discovery from the Government of five classified reports concerning microwire. On October 31, 2014, the Government filed a motion to compel responses to its First Set of Interrogatories and First Set of Requests for Production because Demodulation did not submit adequate answers to these discovery requests, and in particular failed to identify its trade secret claims. On December 15, 2014, the Court granted both motions. The motions now resolved in this decision are primarily the result of events that occurred after the Court granted these two motions to compel.

The first problem occurred when the Government produced the five classified reports in redacted form. These reports were protected material under the Protective Order in the case. Plaintiff's counsel, Mr. Light, blatantly disregarded the Protective Order by failing to file under seal a motion that included the protected information, and also by providing the Government's five reports to a non-qualified expert, Dr. Deborah Chung. As a result of Mr. Light's two violations of the Protective Order, the Government filed a motion requesting Plaintiff to return all protected material. After the Court learned that Mr. Light also distributed the protected information to defendants in a parallel New Jersey litigation, the Court required Plaintiff to identify all recipients of the protected material. Mr. Light's identification of the recipients of the protected material revealed further violations of the Protective Order. The Court learned that Mr. Light distributed the protected information to Demodulation itself, including its Chief Executive Officer, Mr. James O'Keefe. Plaintiff then filed a motion for reconsideration of the Court's order directing the return all protected information, which the Court now DENIES.

The second problem concerns Plaintiff's inability to identify its trade secret claims and furnish adequate discovery responses to the Government. As of the date of this decision, Demodulation still has not provided adequate responses to the Government identifying what its trade secrets are, despite three court orders directing Demodulation to identify its trade secret claims. The Government has now filed three motions for sanctions regarding Plaintiff's failure to identify its trade secrets. The Government requests dismissal of the trade secret claims, and the recovery of its costs and attorneys' fees under 28 U.S.C. § 1927 for vexatious multiplication of proceedings. After review of the parties' arguments, the Court finds Mr. Light's repeated failure to respond to the Court's orders and the Government's discovery requests worthy of sanctions and thus, DISMISSES all of

Plaintiff's trade secret claims. The Court also finds that Mr. Light unreasonably and vexatiously multiplied the litigation in this case and thus, awards the Government its reasonable costs and attorneys' fees for each of the three motions for sanctions it had to file.

Finally, this decision resolves Demodulation's request to extend the discovery period, and the Government's cross-motion for protection from further discovery. The Court GRANTS the Government's cross-motion finding that Demodulation has not shown good cause in seeking to extend the discovery period. The substitution of new counsel does not constitute good cause as Demodulation unreasonably delayed in serving its deposition and written discovery requests, particularly where fact discovery was being conducted for over two years. Moreover, Demodulation's counsel unreasonably served on the Government 500 requests for admissions, several hundred requests for production of documents, and approximately 80 interrogatories, including subparts, on the last day of discovery. Fact discovery is closed and the Government has no obligation to respond to any of Demodulation's requests served on the last day of discovery. Plaintiff's deposition requests are also DENIED.

Factual and Procedural Background

There have been extensive motions in this case, stemming from a long discovery battle and multiple violations of Court orders by Plaintiff's counsel. The extent of the proceedings is reflected by the Court's docket sheet, which currently contains 165 entries. The Court will not repeat all of the background of the case here, but instead, will limit the background of this decision to those docket entries that are relevant to the current disputes and the motions decided by the Court on August 10, 2015. The facts here primarily concern three discovery disputes. The first concerns Mr. Light's repeated failure to identify Demodulation's trade secret claims, and the deficient answers to the Government's interrogatories. The second involves the production of the Government's five classified reports and Mr. Light's conduct in providing the classified reports to non-qualified individuals in violation of the Court's Protective Order. The last dispute concerns Demodulation's request to extend discovery, including its overly broad and unreasonable discovery requests that were served on the Government on the last day of fact discovery.

A. <u>The Trade Secret Claims</u>

On October 31, 2014, the Government filed its Motion to Compel Answers to its First Set of Interrogatories and First Set of Requests for Production and for attorneys' fees, because Demodulation failed to identify what its trade secret claims were and only provided one page of responsive material. Def.'s Mot. to Compel, Dkt. No. 74. After Demodulation failed to respond to the Government's Motion to Compel by the December 1, 2014 deadline despite being granted an extension by the Court, the Government filed its

Motion to Enter Order Compelling Discovery and to Show Cause, Dkt. No. 77. The Court granted the Government's Motion to Compel and ordered Demodulation to provide a complete response to the Government's First Set of Interrogatories and First Set of Requests for Production by January 5, 2015 and also ordered Demodulation to show cause why it should not be sanctioned. See Order Granting Def.'s Mot. to Compel, Dkt. No. 79. On January 5, 2015, then counsel of record for Plaintiff, Mr. Light, furnished a declaration to the Court specifying why he or Demodulation should not be sanctioned. Decl. of Mr. Benjamin D. Light, Dkt. No. 81. Due to the continued inadequacy of Plaintiff's responses to the Government's discovery requests, however, the Court ordered Demodulation to submit supplemental discovery responses and to provide all responsive documents by February 11, 2015. Order, Dkt. No. 83.

However, Demodulation's supplemental responses (Dkt. No. 91-1) remained inadequate and still did not address its incomplete document production or its incomplete answers to the Government's interrogatories. See Def.'s Resp. to Pl.'s Resp. to Show Cause Order at 1, Dkt. No. 84. Because of the inadequacies of Demodulation's responses, the Government filed its Renewed Motion to Compel Discovery and for Sanctions. See Def.'s Renewed Mot. for Sanctions at 1, Dkt. No. 91 ("Demodulation's answers are still non-responsive to Interrogatory No. 1 and do not address Interrogatories No. 2 through No. 6 at all."). On April 21, 2015, the Government filed a cross-motion for additional sanctions against Plaintiff's counsel seeking costs and attorneys' fees under 28 U.S.C. § 1927, asserting that "Demodulation [still] has not produced the amended interrogatories and additional documents that it no longer contests." Def.'s Cross-Motion at 16-17, Dkt. No. 113.

### B. The Five Classified Reports

On October 2, 2014, Demodulation filed a motion to compel the production from the Government of five classified reports concerning microwire. Pl.'s Mot. to Compel at 2, Dkt. No. 72. On December 15, 2014, the Court granted Demodulation's Motion to Compel and ordered the Government to produce the five classified reports to Demodulation. Order Granting Pl.'s Mot. to Compel at 1, Dkt. No. 78. The classified reports were produced in redacted form to Demodulation on April 3, 2015. Def.'s Resp. to Court's Apr. 2, 2015 Order at 1, Dkt. No. 105. Prior to that date, the Government's obligation to produce the classified reports had been stayed by court order because of Plaintiff's continued failures to respond to the Government's discovery requests. See Order Staying Def.'s Resp. to Disc., Dkt. No. 93. However, the stay was lifted on April 2, 2015 following a status conference with the parties. See Order Lifting Stay of Def.'s Disc. Obligations, Dkt. No. 103. Notably, the classified reports were protected information that were subject to the Court's Protective Order. See Protective Order, Dkt. No. 85-1. The Protective Order made clear that without permission from the Government, only the attorneys in this litigation could have access to the Government's protected information.

Id. ¶ 16. It also specified certain steps that Demodulation had to take to have its experts admitted under the Protective Order. Id. ¶ 20.

Despite the Protective Order, following the Government's distribution of the formerly classified reports in redacted form to Demodulation's counsel, the Court soon learned that the five classified reports had been produced to one of Plaintiff's experts, Dr. Chung, even though she was not admitted under the Protective Order. See Def.'s Third Mot. for Sanctions at 1-3, Dkt. No. 114. The Government and the Court discovered the violation after Plaintiff filed its Memorandum of Law in Opposition to the United States' Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment and to Compel Discovery, Dkt. No. 111. In its filing to the Court, Demodulation's counsel had attached Dr. Chung's report as an exhibit, which revealed that Dr. Chung had reviewed "the formerly classified reports and other reports from DOW/BWXT concerning their microwire efforts" in violation of the Protective Order. Pl.'s Cross-Motion and Resp. to Def.'s Partial Mot. for Summ. J. at PA 334, Dkt. No. 111-10. Further, Demodulation's counsel failed to file its Memorandum of Law under seal, which constituted another violation of the Protective Order. Def.'s Third Mot. for Sanctions at 1, 5, Dkt. No. 114. The Government then filed a Third Motion for Sanctions after learning of these two violations of the Protective Order. Id. at 1. As a consequence of the violations, the Court ordered Demodulation to return all protected information to the Government, including the classified reports. See Order for Return of Protected Material at 1-2, Dkt. No. 123.

Two more violations were discovered after the Government filed its Third Motion for Sanctions and after the Court issued its order directing Demodulation to return all protected information. First, the Court learned that Demodulation provided Dr. Chung's report, which included information from the five classified reports, to the defendants in a parallel New Jersey litigation, Demodulation, Inc. v. Corning, Inc., et al., No. 11-296 (D.N.J.). See Def.'s Mot. to Identify Recipients of Protected Information at 2-3, Dkt. No. 127. Second, following the Court's order directing Plaintiff to identify all persons to whom the classified reports were given, the Court learned that Plaintiff had provided the report to the following five individuals: Mr. James O'Keefe, President and CEO of Demodulation, Dr. Wesley King, former Operations Manager of Demodulation, Mr. Michael Slavin, former consultant for Demodulation, Dr. John Hnatio, Chief Executive Officer of the Institute of Complexity Management ("ICM") and Mr. Bruce Becker, Chief Operating Officer of ICM. See Pl.'s Resp. to Order Requiring Identification of Recipients of Protected Information at 6-7, Dkt. No. 130. None of these five individuals had been admitted under the Protective Order.

C. Plaintiff's Request to Extend Discovery

In addition to the violations of the Protective Order and the motions for sanctions, the Court has other outstanding discovery motions. On June 23, 2015, Demodulation filed a motion for an extension of time to complete discovery that was limited to depositions and

document requests related to the depositions. Pl.'s Mot. for Extension of Time to Complete Disc., Dkt. No. 141. However, on the last day of discovery, Demodulation also served the Government with "500 requests for admissions, several hundred requests for production of documents, and approximately 80 interrogatories, including subparts." Def.'s Cross-Motion for Protection from Further Disc. at 1, Dkt. No. 146. Not surprisingly, the Government cross-moved for protection from further discovery. See id. at 1-2.

In total, there are eight fully briefed motions that are subject to this decision and that were ruled upon at the August 10, 2015 hearing. The motions are as follows:

1. Demodulation's Motion to Extend the Discovery End Date Limited to Depositions and Document Discovery Related Thereto and for Clarification of the Schedule for Expert Testimony (Dkt. No. 141).

2. The Government's Cross-Motion for Protection from Further Discovery (Dkt. No. 146).

3. Renewed Motion of the United States to Compel Discovery and for Sanctions (Dkt. No. 91).

4. The Government's Third Motion for Sanctions (Dkt. No. 114).

5. Demodulation's Motion for Reconsideration of the Court's May 13, 2015 Order (Dkt. No. 134).

6. Demodulation's Cross-Motion to Compel Testimony (Dkt. No. 111).

7. Demodulation's Motion to Withdraw and Amend Demodulation's Response to Defendant's May 29, 2015 Requests for Admissions (Dkt. No. 145).

8. Cross-Motion of the United States for Additional Sanctions Against Plaintiff's Counsel Pursuant to 28 U.S.C. § 1927 (Dkt. No. 113).

The Court will provide further detail on each of its rulings, addressing each of the eight motions in turn.

Analysis of the Motions Resolved at the August 10, 2015 Status Conference

A. Demodulation's Motion to Extend the Discovery End Date Limited to Depositions and Document Discovery Related Thereto and For Clarification of the Schedule for Expert Testimony and the Government's Cross-Motion for Protection from Further Discovery.

As a preliminary matter, the Court finds that fact discovery in the case ended as of June 29, 2015.[2] Fact discovery has been available for over two years, which should have afforded both parties ample time to complete discovery and resolve any discovery disputes. The Court initially gave the parties a 234-day fact discovery period, ending on June 23, 2014. Scheduling Order, Dkt. No. 40. The Court later granted two extensions of the fact discovery period, giving both parties an additional year to complete fact discovery. See Scheduling Order, Dkt. No. 71; Order Extending Discovery Period, Dkt. No. 89. Even though Demodulation had sufficient time to complete fact discovery, Demodulation and its counsel engaged in dilatory discovery tactics, waiting until the last day to serve the Government with 500 requests for admissions, several hundred requests for production of documents, and approximately 80 interrogatories. Def.'s Cross-Motion for Protection from Further Disc. at 1, Dkt. No. 146. Demodulation also was tardy in scheduling the depositions of Government officials or filing motions to compel their depositions since it knew as early as November 2012 it would possibly need to depose these individuals. See id. at 3. Despite knowing these officials might have discoverable information, Demodulation sat on its hands rather than taking the depositions of these witnesses. See id. at 3-4 (explaining that Demodulation waited until June 26, 2015, three days before fact discovery was set to close to take the deposition of Major General Harencak, a high ranking Government official, and failed to attempt to take any depositions for eighteen months from June 2013 through November 2014).

Demodulation claims that the change in lead counsel on June 16, 2015 and the need for the classified reports constitute good cause to extend the discovery period. Pl.'s Reply to Mot. for Extension of Time to Complete Disc. at 1-3, Dkt. No. 161. However, neither of these arguments has any merit. First, it is of no avail that new counsel took over the case when fact discovery had been ongoing for over two years. Second, the delay in serving the discovery requests cannot be attributed to the need for the classified reports. As the Government pointed out in its Reply to Demodulation's Opposition to the Government's Cross-Motion for Protection from Further Discovery, Docket No. 163, "the voluminous discovery requests were drafted *before* the Court ordered Demodulation to turn over the protected information to the Court." Id. at 6. Thus, Demodulation could have served its discovery requests well before the fact discovery deadline. Yet, Demodulation chose to wait. It must now face the consequences of that decision.

The Court also finds that the discovery requests that Demodulation served on the Government on the last day of discovery were overly broad and unreasonable, violated the Court's rules, and sought to delay this case needlessly for months, if not years. Demodulation violated Rule 6.1(b) by failing to identify any "meet and confer" effort to resolve the discovery dispute without the need for court intervention, and violated Rule

---

[2] Counsel for Plaintiff and the Government did agree to a one-day enlargement of discovery to June 30, 2015, to allow Mr. Frank Downs's deposition. Def.'s Resp. to Pl.'s Mot. for Extension of Disc. at 1, Dkt. No. 146.

5.4(a)(5)(B) by not filing its opposition to the Government's cross-motion with its reply to the Government's Opposition. Further, the Court finds under Hickman v. Taylor, 329 U.S. 495, 507-08 (1947) that Demodulation's discovery practices are being conducted in bad faith with the purpose to "annoy, embarrass, or oppress" the Government. The Court will not permit such abusive discovery practices.

The case has been ongoing in this Court for over four years and the delay in the proceedings must end. Accordingly, the Court GRANTS the Government's Cross-Motion for Protection from Further Discovery (Dkt. No. 146), and DENIES Plaintiff's Motion to Extend the Discovery End Date Limited to Depositions and Document Discovery Related Thereto (Dkt. No. 141). The Government has no obligation to respond to any of Demodulation's requests that it submitted to the Government on the last day of fact discovery. Demodulation will not be permitted to take the depositions of any of the witnesses or Government officials[3] it wished to depose. See Pl.'s Cross-Motion and Resp. to Def.'s Partial Mot. for Summ. J. at 29, Dkt. No. 111; Mot. for Extension of Time to Complete Disc. at 1, Dkt. No. 141. Fact discovery is now over. Demodulation's deposition notices for those witnesses are hereby DENIED.

> B. Renewed Motion of the United States to Compel Discovery and for Sanctions and Cross-Motion of the United States for Additional Sanctions Against Plaintiff's Counsel Pursuant to 28 U.S.C. § 1927.

The Government's next motion concerns Demodulation's trade secret claims, which, if granted, would affect Counts One, Two, Four, and Five of Plaintiff's Third Amended Complaint. See Def.'s Renewed Mot. to Compel Disc. & for Sanctions at 9-10, Dkt. No. 91. During the discovery period, the Government requested Demodulation to "[d]escribe each and every trade secret that Demodulation claims that it 'possessed' or possesses in Paragraph 70 of its Second Amended Complaint in sufficient detail to allow the Government to locate all information that it received from Demodulation that is currently or may be in the future at issue in this litigation." Id. Demodulation submitted inadequate boilerplate responses to the Government's interrogatories and accordingly, the Court ordered Demodulation to provide supplemental responses. See Order Granting Def.'s Mot. to Compel, Dkt. No. 79. However, Demodulation still failed to respond to the Government's discovery requests. Instead, it submitted a response simply stating that the

---

[3] The Government officials that Demodulation wished to depose are: Mr. David K. Mee, Mr. Neville Howell, Mr. Ronald Thompson, Mr. Downs, Mr. Daniel Gutierrez, and Major General Harencak. See Pl.'s Mot. for Extension of Time to Complete Disc. at 1, Dkt. No. 141. Demodulation also wished to take depositions of Ms. Julianne Levings, Mr. Roger Lewis, Ms. Nathalie Lemmon, and Dr. Dale Sivils. Id. Plaintiff was able to take the depositions for Mr. Downs and Mr. Lewis, but has not taken any other depositions of the above named individuals. Pl.'s Resp. to Mot. for Extension of Time to Complete Disc. at 4, Dkt. No. 161.

trade secrets could be found among 2,360 pages of its own documents, many of which are unreadable. Def.'s Renewed Mot. to Compel Disc. & for Sanctions at 4-5, Dkt. No. 91.

To this day, Demodulation's responses to the Government's request remain entirely inadequate. It is Plaintiff who is asserting the trade secret claims in this litigation and it should know what those trade secrets are. Demodulation cannot put the burden on the Government to find the trade secrets simply by pointing out where they can be found. "At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are." Xerox Corp. v. Int'l Bus. Machines Corp., 64 F.R.D. 367, 371 (S.D.N.Y. 1974). Because Demodulation has been unable to describe its trade secret claims with any sufficient detail, the Court concludes that Plaintiff has no trade secrets to be protected, and thus, the Government could not have misappropriated any of Plaintiff's trade secrets. The Court also finds that it would be unfair to the Government to allow such claims to go forward. By not identifying its trade secrets, the Government is unable to determine which, if any, trade secret has been misappropriated, and accordingly, cannot develop an adequate defense. See Def.'s Renewed Mot. to Compel Disc. & for Sanctions at 7, Dkt. No. 91. Dismissal of all the trade secret claims is entirely warranted here. Demodulation did not act merely negligently in its failure to respond to the Government's interrogatories. See Ingalls Shipbuilding, Inc. v. United States, 857 F.2d 1448, 1451 (Fed. Cir. 1998) ("A party's simple negligence, grounded in confusion or sincere misunderstanding of the Court's orders, does not warrant dismissal.") (internal citations omitted). Demodulation was given multiple chances to correct and amend its responses, and its conduct was not merely the product of a misunderstanding of the Court's orders. Accordingly, the Government's "Renewed Motion of the United States to Compel Discovery and for Sanctions" is GRANTED. All of Plaintiff's trade secret claims as they are contained in Counts One, Two, Four, and Five of Plaintiff's Third Amended Complaint are hereby dismissed.

The Court also finds that Plaintiff unreasonably and vexatiously multiplied the proceedings in this case, and accordingly, GRANTS the Government's Cross-Motion for Additional Sanctions under 28 U.S.C. § 1927. The Government is awarded its costs and reasonable attorneys' fees for its three sanction motions concerning the inadequacy of Plaintiff's responses to the Government's discovery requests. See Def.'s Renewed Mot. to Compel Disc. & for Sanctions, Dkt. No. 91; Def.'s Third Mot. for Sanctions, Dkt. No. 114; Def.'s Cross-Motion for Additional Sanctions under 28 U.S.C. § 1927, Dkt. No. 113. The Court has the inherent power to impose sanctions under Rule 37 and 28 U.S.C. § 1927. See Multiservice Joint Venture, LLC v. United States, 85 Fed. Cl. 106, 112 (2008). Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." Before

a court can award attorneys' fees, it must find bad faith. A finding of bad faith is "warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." Amlong & Amlong, P.A. v. Denny's Inc., 500 F.3d 1230, 1242 (11th Cir. 2006).

Here, the Court finds that Mr. Light's conduct rises to the level of bad faith. By not identifying any trade secret claims, it suggests to the Court that Plaintiff has no trade secrets to be protected. Thus, without any trade secrets, its claims for misappropriation of trade secrets were entirely frivolous. Id. The continued maintenance of the frivolous trade secret claims and the failure to respond adequately to discovery requests unreasonably and vexatiously multiplied the proceedings in the case. Such conduct cannot be condoned. The Court hereby requests counsel for the Government to file a Bill of Costs and its claim for reasonable attorneys' fees in accordance with the Court's rules on or before August 27, 2015.

### C. Plaintiff's Motion for Reconsideration of the Court's May 13, 2015 Order.

Next the Court addresses its bench ruling that denied Demodulation's motion for reconsideration of the Court's May 13, 2015 Order directing Plaintiff to return all protected information. Demodulation seeks reconsideration of the Court's May 13, 2015 Order to prevent "manifest injustice" and argues that the sanctions imposed were disproportionate under the circumstances. Pl.'s Mot. for Reconsideration at 3, Dkt. No. 134. Demodulation claims its violations of the Protective Order "[were] not willful or reckless but occurred because the protective order itself contained an error in referencing other applicable paragraphs." Id. According to Demodulation, because paragraph 5(e) of the Protective Order incorrectly referred to paragraph nineteen instead of paragraph twenty, it did not need to seek permission of the Government or the Court before giving protected information to its experts, among others. Pl.'s Resp. to Def.'s Third Mot. for Sanctions at 1, Dkt. No. 117. Plaintiff's argument is frivolous and does not acknowledge the seriousness of the violations.

A decision on whether to grant a motion for reconsideration is within the sound discretion of the trial court. Only by showing "exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact" should such a motion be granted. Webster v. United States, 93 Fed. Cl. 676, 679 (2010) (citing Henderson Cty. Drainage Dist. No. 3 v. United States, 54 Fed. Cl. 334, 337 (2003)). Exceptional circumstances include: (1) an intervening change in the controlling law; (2) availability of previously unavailable evidence; or (3) preventing manifest injustice. Shirlington Limousine & Transp., Inc. v. United States, 78 Fed. Cl. 27, 29 (2007). In seeking reconsideration based upon "manifest injustice," the moving party must demonstrate that the injustice is "apparent to the point of being almost indisputable." Webster, 93 Fed. Cl. at 679 (quoting Pac. Gas & Elec. v. United States, 74 Fed. Cl. 779, 785 (2006)).

None of the exceptional circumstances is present here to justify granting Demodulation's motion for reconsideration. As of the date of this decision, the Court is aware of at least four violations of the Protective Order by Demodulation's counsel. First, Demodulation filed an unsealed Memorandum of Law in Opposition to the United States' Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment and to Compel Discovery, Docket No. 111, to which it attached a number of documents subject to the Protective Order including the formerly classified reports. Second, Demodulation provided the protected information to its expert, Dr. Chung, without properly requesting admission of Dr. Chung to the Protective Order. Dr. Chung did not provide a declaration agreeing to be bound by the Protective Order, she did not provide her curriculum vitae and a list of cases in which she has testified before, and the Government did not approve of her admittance to the Protective Order. All of these conditions had to be met before Dr. Chung could have access to the Government's protected information. Third, Dr. Chung's report, which contained the protected information, was provided to the defendants in Demodulation, Inc. v. Corning, Inc., et al., No. 11-296 (D.N.J.), a parallel litigation brought by Plaintiff against unrelated private parties. Finally, after the Court issued an order directing Demodulation to disclose all recipients of the Government's protected information, Mr. Light revealed that he had provided the protected information to Mr. O'Keefe, Dr. King, Mr. Slavin, Dr. Hnatio, and Mr. Becker, without applying for any of these individuals to be admitted under the Protective Order.

Even though the Protective Order contains a typographical error, the error does not excuse the conduct of Plaintiff's counsel. It is clear from the face of the Protective Order the steps Demodulation had to take to gain admittance of independent experts or individuals not listed in paragraphs 5(a)-(d) and 5(g) under the Protective Order so that they could be granted access to the Government's protected information. It is also clear that no individual could be provided the protected information unless they were admitted under the Protective Order or were one of the individuals listed in paragraphs 5(a)-(d) and (g). The Protective Order is not ambiguous. Although paragraph 5(e), which pertains to experts, incorrectly refers to paragraph nineteen, instead of paragraph twenty, paragraph nineteen provides: "[n]othing in this Protective Order shall prevent disclosure of Proprietary Information if the Owner consents to such disclosure or if the Court, after notice to the Owner and an opportunity to be heard, orders such disclosure." Protective Order ¶ 19, Dkt. No. 85-1. Nothing in paragraph nineteen or the entire Protective Order itself suggests that Demodulation had free rein to disseminate the protected information to non-qualified individuals. Further, had Demodulation's counsel simply read the next paragraph, paragraph twenty, he would have realized the steps he needed to take to gain admittance of independent experts. Id. ¶ 20. Thus, the Protective Order is clear that if an individual was not one of those listed in paragraph 5(a)-(d) or (g), such as an independent expert, that person must be admitted to the Protective Order by complying with paragraph twenty, by order of the court, or by written agreement of the parties, provided that the

person seeking to be admitted to the Protective Order first signed a declaration. See id. at 7-8.

The violations committed by Mr. Light are not minor infractions and are more egregious than the violations cited by Demodulation in its reply brief. Demodulation claims that its actions were less serious than in other cases such as Pacific Gas & Electric Co. v. United States, 82 Fed. Cl. 474, 484-85 (2008). However, Demodulation's counsel vastly understates the severity of Mr. Light's actions in claiming that his conduct was less severe than that of attorneys in other cases. For example, in Pacific Gas, plaintiff's counsel filed protected documents in another case (Dairyland) under seal. Plaintiff's counsel refused to withdraw the documents and the Government filed a successful motion to strike. Pacific Gas, 82 Fed. Cl. at 477-78. The court in Pacific Gas granted attorneys' fees but refused to require plaintiff to return or destroy all protected documents or bar plaintiff's future use of the protected documents. Id. at 485.

Plaintiff overlooks that counsel in Pacific Gas committed only *one* violation of the protective order. Here, there were at least four violations. Plaintiff also points out that the court in that case stated that it "does not believe that the PG&E plaintiff should be punished for actions its counsel took while representing another client in another case." Id. But here, Demodulation's counsel was representing only Demodulation. Thus, the Court is not punishing Plaintiff for counsel's unrelated conduct. Further, the disclosure to Mr. O'Keefe, Dr. King, Mr. Slavin, Dr. Hnatio and Mr. Becker cannot be characterized as "simple negligence," as Plaintiff claims. Demodulation was on notice that it had already violated the Protective Order through the Government's Motion to Seal its Memorandum of Law and its Motion for Sanctions after it learned of Demodulation's disclosure of the protected information to Dr. Chung.

The Court's Protective Order must be enforced, and the Court notes that it does not take lightly multiple willful or reckless violations of its orders. See, e.g., Lion Raisins, Inc. v. United States, 64 Fed. Cl. 536, 542 (2005) ("Enforcement of protective orders implicates the rule of law."); see also Precision Pine & Timber, Inc. v. United States, No. 98-720C, 2001 WL 1819224, at *3 (Fed. Cl. 2001) ("[T]he Rules of the Court provide for the imposition of sanctions whenever a party abuses the discovery process or violates an order of the Court."). The conduct of Plaintiff's counsel rises far beyond the level of inadvertence or negligence, particularly where, as here, counsel repeatedly provided information to non-qualified individuals despite the unambiguous language of the Protective Order. Accordingly, Plaintiff's motion for reconsideration of the Court's May 13, 2015 Order directing Plaintiff to return all protected material in this case is DENIED.

D.  The Government's Third Motion for Sanctions.

Next, the Court addresses the Government's Third Motion for Sanctions filed on April 30, 2015, Docket No. 114. The Court granted the Government's motion in part, when

it required Plaintiff to return all protected material in its possession or in the possession of its agents, see Order for Return of Protected Material, Dkt. No. 123, and when it later required Plaintiff to identify all persons who were provided access to or received the Government's protected information, see Order Requiring Identification of Recipients of Protected Material, Dkt. No. 129. Thus, to the extent that the Government's Third Motion for Sanctions seeks identification of persons who received the protected information or requests the Court to order the destruction of or the return of the protected information, that portion of the motion is moot.

The Court notes that the Government also requested the Court to enter default judgment against Demodulation on all claims as part of its Third Motion for Sanctions. See Def.'s Third Mot. for Sanctions at 6, Dkt. No. 114. That portion of the Government's request is DENIED. Many of the claims have already been dismissed by this decision based upon Plaintiff's failure to identify its trade secrets. To the extent that the Government seeks further sanctions, the Court finds dismissal of those claims a disproportionate sanction for Demodulation's conduct. Dismissal of claims is a harsh remedy and "reserved for only the most severe abuses of the discovery process." Genentech, Inc. v. U.S. Int'l Trade Com'n, 122 F.3d 1409, 1423 (Fed. Cir. 1997) (quoting Hendler v. United States, 952 F.2d 1364, 1382 (Fed. Cir. 1991)). The Court finds that Demodulation's conduct, while abusive enough to warrant dismissal of all the trade secret claims, is not at the level where dismissal of all claims would be warranted. Further, Demodulation's misconduct occurred in the hands of a law firm no longer representing the Plaintiff. Accordingly, the remainder of the Government's Third Motion for Sanctions is DENIED.

> E. Motion to Withdraw and Amend Demodulation's Response to Defendant's May 29, 2015 Requests for Admissions.

Finally, the last motion addressed by this decision is Plaintiff's Motion to Withdraw and Amend its Responses to the Government's May 29, 2015 Requests for Admission, Dkt. No. 145. Plaintiff did not submit answers to the Government's Requests for Admissions by the deadline of June 29, 2015 and therefore, the matters are deemed to be admitted under Rule 36(a)(3). The Government responded that it did "not oppose Demodulation's motion to withdraw its admissions and replace the earlier admissions with the proposed responses provided in Docket No. 145-1." Def.'s Resp. to Pl's Mot. to Amend Responses to Requests for Admis. at 1, Dkt. No. 151. Accordingly, Plaintiff shall be permitted to withdraw and amend its responses to Defendant's May 29, 2015 Requests for Admission with the responses provided in Docket No. 145-1.

Conclusion

All of Plaintiff's trade secret claims as they are included in Counts One, Two, Four, and Five are hereby dismissed. Fact discovery is over. The Court awards the Government its reasonable costs and attorneys' fees under 28 U.S.C. § 1927 incurred in filing its three

motions for sanctions.  The Government should submit its claim on or before August 27, 2015.  The Callagy law firm and Mr. Light are responsible for payment of the attorneys' fees and costs, not Demodulation.

The next step in this case will be for a <u>Markman</u> claim construction hearing and briefing process to be proposed by the parties.  Counsel should submit their proposed <u>Markman</u> procedures on or before August 27, 2015.  Expert discovery will not proceed until after the <u>Markman</u> hearing and ruling.

IT IS SO ORDERED.

s/Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge