# In the United States Court of Federal Claims

No. 11-236C

(Filed:  August 27, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DEMODULATION, INC., | Privity of Contract; Cooperative Research and Development Agreement (CRADA); Subcontractor Claims; Subject Matter Jurisdiction; Partial Summary Judgment. |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Keith A. McKenna*, The McKenna Law Firm LLC, Montclair, New Jersey, for Plaintiff.

*Gary L. Hausken*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *John Fargo*, Director, and *Alice Suh Jou*, Of Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

### OPINION AND ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

WHEELER, Judge.

Plaintiff Demodulation, Inc. ("Demodulation") filed a complaint in this Court on April 14, 2011 against the United States seeking approximately $50 million in damages for breach of contract, misappropriation of trade secrets, and patent infringement.  The twelve patents at issue relate to various uses of microwire.  Microwire, a glass-coated amorphous metal filament, is thinner than a human hair and is used in electronic surveillance systems.  Microwire is useful in such systems because it broadcasts a distinct signal when struck by radio frequency waves and thus, the signal may be detected from several kilometers away without the need for a physical connection.

On February 26, 2015, counsel for the Government moved for partial summary judgment as to Counts One, Two, and Five of Demodulation's Third Amended Complaint. In its motion, the Government argues that it should be granted summary judgment on Count One because Demodulation was not in privity of contract with the United States for any of the three express contracts referenced in the Third Amended Complaint. The Government maintains that the Cooperative Research and Development Agreement ("CRADA"), No. Y-1207-0104, was entered into between two private parties, Babcock & Wilcox Technical Services Y-12, LLC ("B&W Y-12") and Demodulation, and the two confidentiality agreements were entered into by two individuals who had no authority to bind the Government. On Count Two, alleging breach of three implied-in-fact contracts, the Government asserts that it should be granted summary judgment because Demodulation did not identify any implied-in-fact contract, let alone any that were breached by the United States. Further, Demodulation only referred to one of the implied-in-fact contracts in its complaint, thereby waiving its right to complain about the other two implied-in-fact contracts it alleges the Government breached. Finally, the Government argues that, with respect to Count Five, misappropriation of trade secrets, insofar as it is based upon a contract theory, summary judgment should be entered in favor of the United States because Demodulation did not assert any contract that was breached by the United States.

On April 20, 2015, Demodulation filed its opposition to the Government's motion and cross-moved for partial summary judgment on Count One, arguing there is no dispute that the Government was a party to the CRADA and breached the terms of the CRADA. As for its remaining claims in Count One, Demodulation opposes summary judgment, asserting that the Government was a party to the confidentiality agreements and that the two individuals who signed the agreements had the authority to bind the Government. On Count Two, Demodulation argues that summary judgment should not be granted because the unauthorized work the Government performed on Demodulation's samples and the unauthorized disclosure of its proprietary information to Technology Service Corporation ("TSC") demonstrate that the Government breached its implied-in-fact contract with the U.S. Naval Sea Systems Command Crane Division ("NAVSEA-Crane"). Demodulation does not address the other two implied-in-fact contracts, claiming that the Government moved only for summary judgment as to the NAVSEA-Crane contract. Finally, Demodulation argues that Count Five must survive summary judgment because there is adequate evidence of the Government's unauthorized disclosures and use of Demodulation's trade secrets by third parties, which are protected under New Jersey state law as property.

The Court notes that it dismissed all of Demodulation's trade secret claims in Demodulation, Inc. v. United States, No. 11-236C, 2015 WL 4760255, at *1 (Fed. Cl. Aug. 13, 2015) as a sanction for Plaintiff's counsel's willful violation of the Court's discovery orders, despite being given three chances by the Court to amend its discovery responses. Accordingly, a summary judgment ruling on part of Count One and all of Counts Two and

Five was made moot by the Court's previous decision.  Demodulation's claim for the Government's alleged breach of the CRADA in Count One survived, however, because the claim relies upon more than just Plaintiff's trade secrets.  For example, Demodulation's claim also pertains to the Government's alleged failure to disclose to Demodulation inventions resulting from information gained from the CRADA, the Government's failure to identify existing Government technology to commercialize Demodulation's technology, and the Government's misrepresentation to Demodulation that there were no government applications for its technology.  Further, the definition of proprietary information under the CRADA included more than just trade secrets.  Thus, the only remaining issues for the Court to decide are first whether the Government was a party or otherwise in privity with the parties to the CRADA and, if so, whether the Government breached the CRADA.

Whether the Government was a party or otherwise in privity to the CRADA is a legal issue that is appropriate for resolution through summary judgment.  The Court finds that Demodulation was a subcontractor with B&W Y-12 and that the Government was not a party to the contract between B&W Y-12 and Demodulation, or otherwise in privity with Demodulation.  A subcontractor cannot maintain a direct appeal against the Government unless the contract provisions clearly indicate that the parties intended to give the subcontractor the right to a direct appeal against the Government, that the prime contractor was the purchasing agent for the Government, or that the Government was so involved with the day-to-day activities of the prime contractor that the prime contractor was an agent for the Government.  Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 555 (2001). The presence of the disputes clause providing for appeals of the decisions of the contracting officer to state court in Tennessee demonstrates that the parties did not intend for Demodulation to have the right to a direct appeal against the Government.  B&W Y-12 also was not the Government's purchasing agent or its agent when it administered the CRADA.  Demodulation was not in privity with the United States and, thus, cannot maintain its claim for breach of the CRADA in this Court because the Court does not have subject matter jurisdiction over its subcontractor claims.  Accordingly, the Government's motion for partial summary judgment on the CRADA is GRANTED.

Factual Background

Before the litigation in this case commenced, Demodulation held twelve patents for various uses of amorphous metal wire, all of which have now expired.[1]  Government's Appendix ("GA") 210, Dkt. No. 94; Demodulation, Inc. v. United States, 118 Fed. Cl. 69, 75 (2014).  Amorphous metal wire has multiple applications, including applications in magnetic sensors.  GA 130 (amorphous glass-coated wires "are appropriate for sensor applications even if the sensitive element is working under applied stress due to their very

---

[1] The Court dismissed Demodulation's allegations relating to a thirteenth patent, U.S. Patent No. 6,270,591 (the "Chiriac patent"), because Demodulation lacked ownership of the patent.  See Demodulation, Inc. v. United States, 118 Fed. Cl. 69, 76 (2014).

good mechanical properties"). The wire is made by placing metal powder in a glass vial and then heating the vial with an induction field. "When the metal melts and the glass softens, the glass is pulled to form microwire." GA 212.

On March 23, 2007, Demodulation entered into the two-year CRADA at issue here. The parties to the CRADA were B&W Y-12 ("the Contractor") under its U.S. Department of Energy ("DOE") Contract and Demodulation ("Participant"). Under the CRADA, Demodulation and B&W Y-12 agreed to use Demodulation's fundamental sensor technology to "develop sensor systems for detection, monitoring and tracking of material and assets." GA 177, 191-92. B&W Y-12 was the management and operating contractor for the National Nuclear Security Administration's ("NNSA's") Y-12 facility located in Westwood, New Jersey. Pl.'s Appendix ("PA") 69, Dkt. No. 111. DOE and the NNSA own the Y-12 facility. The CRADA was signed by Mr. Willie Wilson, Senior Contracts Manager for B&W Y-12 on February 12, 2007, and Mr. James O'Keefe, President and Chief Executive Officer of Demodulation on March 23, 2007. GA 191. The Government was to provide funding for the CRADA through its contract with B&W Y-12 and the CRADA also specified that formal reports would go to DOE. B&W Y-12's contract with the Government also mandated that any CRADA entered into by B&W Y-12 first had to be approved by a DOE contracting officer. PA 574.

The CRADA contemplated that various reports would be produced, including a final report that would contain a list of "Subject Inventions." Subject Inventions are "any invention of the Contractor or Participant conceived or first actually reduced to practice in the performance of work under th[e] CRADA." GA 177. The CRADA also contained specific provisions for dealing with Proprietary Information. Proprietary Information is defined as "information which embodies (i) trade secrets or (ii) commercial or financial information which is privileged or confidential under the Freedom of Information Act (5 U.S.C. § 552(b)(4)), either of which is developed at private expense outside of this CRADA and which is marked as Proprietary Information." Any "information produced in the performance of [the] CRADA" was marked as "Generated Information" unless it was marked as "Protected CRADA Information" by a party to the CRADA and "which would have been Proprietary Information had it been obtained from a non-federal entity." Id.

A key provision in the CRADA is the disputes clause providing for the resolution of any dispute that arose between the parties to the CRADA. GA 189-190. The disputes clause provides:

> The Parties shall attempt to jointly resolve all disputes arising from this CRADA. If the parties are unable to jointly resolve a dispute within a reasonable period of time, the dispute shall be decided by the DOE Contracting Officer, who shall reduce his/her decision to writing within 60 days of receiving

4

in writing the request for a decision by either Party to this
CRADA . . . . The decision of the DOE Contracting Officer is
final unless, within 120 days, the Participant brings an action
for adjudication in a court of competent jurisdiction in the *State
of Tennessee*.

Id. (emphasis added).  On June 29, 2012 Plaintiff sought final adjudication from a
contracting officer alleging that the Government breached the CRADA.  The DOE
contracting officer denied all claims finding that the Government was not a party to the
CRADA.  GA 195, 250-56.  On April 14, 2011, Demodulation filed suit in this Court.  The
parties' cross-motions for partial summary judgment are fully briefed and the motions are
ready for decision.

Analysis

A.  Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  A
material fact is one that "will make a difference in the result of the case."  Curtis v. United
States, 144 Ct. Cl. 194, 199 (1958).  The burden of demonstrating the absence of any
genuine issue of material fact initially falls on the moving party.  Young Enters., Inc. v.
United States, 26 Cl. Ct. 858, 863 (1992).  The moving party may discharge its burden by
showing the absence of evidence in support of the non-moving party's case.  Celotex Corp.
v. Catrett, 477 U.S. 317, 321, 325 (1986).  The non-moving party must then bring forth
sufficient evidence to show that a genuine issue of material fact exists for trial.  Crown
Operations Int'l, Ltd. v. Solutia, Inc., 289 F.3d 1367, 1377 (Fed. Cir. 2002) (citing Celotex,
477 U.S. at 322-23).

B.  The Government is Not in Privity with Demodulation and B&W Y-12 Under the
    2007 Cooperative Research and Development Agreement.

Demodulation claims that there is no genuine dispute of material fact regarding its
claims for breach of the CRADA and that it is clear the Government is a party to the
CRADA.  Pl.'s Compl. ¶ 34; Pl.'s Opp. to Def.'s Mot. for Partial Summ. J. at 18 ("Pl.'s
Opp."), Dkt. No. 111 ("[A]ll CRADAs are contracts with the [F]ederal Government that
support Tucker Act jurisdiction" and that B&W Y-12 was merely "standing in the shoes
of the United States Government.").  According to Demodulation, all rights and obligations
of the CRADA remained with the Government at all relevant time periods.  Thus, Plaintiff
claims that at a minimum, the Government was in privity of contract with B&W Y-12 and
Demodulation.  The Government argues, on the other hand, that the CRADA was merely
an agreement between two private parties and it was not a party to the contract or in privity

5

with either party. Thus, the Court has no subject matter jurisdiction to hear the claim under the Tucker Act, 28 U.S.C. § 1491. Def.'s Mot. for Partial Summ. J. at 19-21, Dkt. No. 94 ("Def.'s Mot.").

The Court agrees with the Government's assertion that it is not a party to the CRADA between B&W Y-12 and Demodulation. The Government and B&W Y-12 had a contract for B&W Y-12 to run the Y-12 National Security Complex ("Y-12 facility"). PA 560. B&W Y-12 then entered into a contract with Demodulation for research activities at the Y-12 facility. Thus, the CRADA between Demodulation and B&W Y-12 is a subcontract between two private entities. PA 69; GA 188 ("It is understood and agreed that this CRADA is entered into by the Contractor under the authority of its *prime* contract with DOE.") (emphasis added). The Government is not a signatory of the CRADA. See GA 191 (CRADA was only signed by B&W Y-12 and Demodulation).

The Tucker Act confers jurisdiction on the Court and allows the Court to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act ("CDA"), including a dispute concerning the termination a of contract. 28 U.S.C. § 1491(a)(2). Generally, however, subcontractors cannot seek and collect damages from the Government because they are not in contractual privity with the Government. See Lockheed Martin, 50 Fed. Cl. at 554. This rule is designed to create "a legal buffer between the subcontractor and the Government. It provides the Government with a means of 'administering its procurement through a single point of contact, [thereby making] the Government's job . . . simpler and cheaper.'" Id.

In most cases, the subcontractor "has no right of direct action against the Government, but must go through the prime contractor." The subcontractor may recover against the Government indirectly if the prime contractor sponsors or certifies the subcontractor's claims or if a prime contractor includes its liability to a subcontractor in its damages against the Government. Id. There are three exceptions, however, which allow a subcontractor to bring a direct action against the Government. Id. "The first is when the contractual provisions indicate that the parties intended to give the subcontractor the right to [bring a] direct appeal against the Government. The second is when the contract provides that the contractor will act as a purchasing agent for the Government." Finally, privity may be created "when the Government so circumvents the authority of the contractor that the contractor becomes a mere agent for the Government." Id. at 555. Thus, unless one of the three exceptions for direct subcontractor appeals applies, Demodulation cannot maintain suit in this Court for the alleged breach of the CRADA.

1.  <u>The Parties Did Not Intend for Demodulation to Have the Right to a Direct Appeal Against the Government.</u>

In <u>United States v. Johnson Controls, Inc.</u>, 713 F.2d 1541 (1983), the Federal Circuit held that the Armed Services Board of Contract Appeals ("ASBCA") did not have jurisdiction over subcontractor Johnson Controls, Inc.'s ("Johnson's") direct appeal against the United States under the CDA. <u>Id.</u> at 1556.  The Federal Circuit relied upon four factors in determining that the ASBCA did not have jurisdiction over Johnson's appeal: (1) there was no direct relationship between the Government and Johnson; (2) the contract contained an express disclaimer of a contractual relationship between the Government and Johnson; (3) the prime contractor was required to obtain a Miller Act payment bond, which provided Johnson recourse other than a direct appeal; and (4) there was no provision in any of the contract documents that clearly authorized a direct appeal by Johnson. <u>Id.</u> at 1552-53.  The factors listed in <u>Johnson Controls</u> are known as the "otherwise in privity" exception to the general bar against direct subcontractor appeals.  <u>See</u> <u>RMI Titanium Co. v. Westinghouse Elec. Corp.</u>, 78 F.3d 1125, 1139 (6th Cir. 1996).

Here, like in <u>Johnson Controls</u>, Demodulation was not in privity with the Government.  Demodulation is a start-up company that did not have a prior contractual relationship with the Government.  <u>See</u> Pl.'s Opp. at 4.  While there was no express disclaimer of a contractual relationship between the Government and Demodulation or a requirement that B&W Y-12 obtain a Miller Act payment bond in the CRADA itself, the intent of the parties that Demodulation would not have a direct appeal against the Government is evident from the disputes clause contained in the CRADA.  The disputes clause provided for disputes between the parties to be adjudicated by state court in Tennessee.  GA 189-90.  Although the CRADA initially allows a dispute to be brought to a DOE contracting officer, there is no direct right of appeal of the decision of the contracting officer.  <u>See, e.g.</u>, <u>RMI Titanium</u>, 78 F.3d at 1140-41 (finding contractual privity because RMI had a direct contractual relationship with the Government for 25 years and because the contract "expressly authorized and direct[ed] RMI to bring its claims before the DOE contracting officer with a direct right of appeal to the Energy Board of Contract Appeals").  Here, instead, the parties were required to bring an appeal of the decision of a DOE contracting officer in state court in Tennessee.  Ignoring the disputes clause contained in the CRADA and allowing a direct appeal by Demodulation would render the disputes clause meaningless.  <u>See</u> <u>Johnson Controls</u>, 713 F.2d at 1555.  Because a waiver of sovereign immunity is strictly construed, absent a clear contractual intent that the parties intended for Demodulation to have a direct appeal, <u>see id.</u> at 1556-57; <u>see also</u> <u>Lockheed Martin</u>, 50 Fed. Cl. at 566, Demodulation cannot maintain its claim for breach of the CRADA in this Court based upon the "otherwise in privity" exception.

2. <u>B&W Y-12 Was Not the Government's Purchasing Agent.</u>

The second exception, the purchasing agent exception to the general bar on direct appeals by subcontractors, is also inapplicable here.  The second exception provides that the Government may be in privity of contract with a subcontractor when "the prime contractor is a mere Government purchasing agent." <u>Lockheed Martin</u>, 50 Fed. Cl. at 562. Three requirements must be met for this exception to apply: (1) the prime contractor must be acting as a purchasing agent for the Government; (2) the agency relationship between the Government and the prime contractor was established by clear contractual consent; and (3) the contract stated that the Government would be directly liable to the vendors for the purchase price. <u>Id.</u>

B&W Y-12 was not acting as a purchasing agent for the Government here.  Rather, B&W Y-12 was simply the manager and operator of the Y-12 facility owned by NNSA. Def.'s Reply to Demodulation's Opp., Dkt. No. 128 ("Def.'s Reply").  Further, the CRADA did not state that the Government would be liable to Demodulation.  The Government was only funding the CRADA through its contract with B&W Y-12; it was not purchasing anything from Demodulation.  The Government is mentioned in the CRADA primarily because it maintained some rights and benefits in the contract and was the initial arbiter of disputes between B&W Y-12 and Demodulation.  The mere mention of the Government in the CRADA, however, does not make it a party to the contract. <u>Wagner v. United States</u>, 71 Fed. Cl. 355, 364 (2006) (noting that where the Government is merely a "third party beneficiary of a contract between two private parties, there is no contract with the United States").  Further, unlike in <u>Kern-Limerick, Inc. v. Scurlock</u>, 347 U.S. 110, 112-113 (1954), where the contract made the purchasing agent relationship explicit, there is no such similar language in the CRADA at issue here.  Demodulation has failed to establish that B&W Y-12 was DOE's purchasing agent so as to be in privity with the Government.

3. <u>The Government Did Not Circumvent B&W Y-12's Authority to Create Privity with Demodulation.</u>

Finally, B&W Y-12 is not the Government's agent, and thus, the third exception does not apply.  B&W Y-12 was responsible for administering the CRADA, not DOE. GA 188.  While Demodulation and B&W Y-12 had to submit annual reports on their progress to DOE, GA 186, the agency was not controlling the day-to-day activities that would put the Government in privity with Demodulation, <u>see</u> <u>Blue Water Envtl., Inc. v. United States</u>, 60 Fed. Cl. 48, 51 (2004) (citing <u>United States v. Orleans</u>, 425 U.S. 807, 814 (1976)) ("direct federal agency supervision of day-to-day operations of a government contractor may convert the government contractor into a federal agency.").

Accordingly, because the Government was not a party or in privity of contract with Demodulation under the CRADA, the Court lacks subject matter jurisdiction over Plaintiff's claim for breach of the CRADA. Defendant's motion for partial summary judgment on Plaintiff's claim for breach of the CRADA IS GRANTED. Demodulation's cross-motion on whether the Government breached the CRADA is DENIED.

C. The Government's Summary Judgment Motion is Moot as to the Remaining Claims in Counts One, Two, and Five of Demodulation's Third Amended Complaint.

The remainder of the Government's motion for partial summary judgment is moot because the Court dismissed all of Demodulation's trade secret claims in Demodulation, Inc., 2015 WL 4760255, at *1, as a sanction for Plaintiff's counsel's willful violations of the Court's orders and the Government's discovery requests, despite being given three chances by the Court to amend its discovery responses. The remaining claims in Count One and all of the claims in Counts Two and Five relied entirely upon Demodulation's trade secrets. Demodulation's claims in Count Two are breach of implied-in-fact contract claims that pertain to the unlawful use of and disclosure of Demodulation's trade secrets. Likewise, Count Five is for misappropriation of trade secrets. Finally, Demodulation's remaining claims in Count One, namely breach of the two confidentiality agreements, rest entirely on the Government's alleged disclosure of its trade secrets to third parties in violation of those agreements. Thus, claims regarding the breach of the two confidentiality agreements in Count One and all of the claims in Counts Two and Five are MOOT.

Conclusion

For the foregoing reasons, the Court GRANTS the Government's motion for partial summary judgment on Count One regarding the CRADA. The Court DENIES Demodulation's motion for partial summary judgment on the same. The Government's motion for summary judgment on the trade secret claims in Counts One, Two and Five is MOOT. All that remains are Demodulation's patent infringement claims in Count Three on the twelve patents it previously held for various uses of microwire.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge