# In the United States Court of Federal Claims

No. 11-236C

(Filed:  April 18, 2016)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DEMODULATION, INC., | \* |
| Plaintiff, | \* Patent Infringement; Accused Product or Device; Summary Judgment; Motion to Amend Infringement Contentions and Claims Chart. |
| v. | \* |
| THE UNITED STATES, | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Keith A. McKenna*, The McKenna Law Firm LLC, Montclair, New Jersey, with whom was *Ernest D. Buff,* Ernest D. Buff & Associates, LLC, Bedminster, New Jersey, for Plaintiff.

*Gary L. Hausken*, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *John Fargo*, Director, and *Alice Suh Jou*, Of Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

WHEELER, Judge.

This patent infringement and trade secrets case has been in this Court for six years. The case has a somewhat notorious history involving the imposition of sanctions against Plaintiff and its original counsel for protective order violations, mistreatment of a subpoenaed non-party, and the Plaintiff's inability to identify any specific facts to support its trade secret claims.  At long last, Plaintiff's remaining patent infringement claims have been exposed as a further "smoke and mirrors" ruse lacking any substance.  While the record in this case consists of 219 entries, there is simply nothing there.  As explained below, due to Plaintiff's failure to identify any specific accused product or device that infringes Plaintiff's patents, Defendant's motion for summary judgment is granted.

Factual Background

On April 14, 2011, Plaintiff Demodulation, Inc. ("Demodulation") filed a complaint in this Court against the United States seeking approximately $50 million in damages for breach of contract, misappropriation of trade secrets, and infringement of thirteen U.S. patents.[1]   In its complaint, Demodulation alleged that the Department of Energy and the National Nuclear Security Administration, among other agencies, stole Demodulation's proprietary technology, intellectual property, and trade secrets.  Plaintiff's third amended complaint, filed on March 28, 2014, contained the following five counts:  (1) breach of express contract pursuant to 28 U.S.C. § 1491; (2) breach of implied contract pursuant to 28 U.S.C. § 1491; (3) patent infringement pursuant to 28 U.S.C. § 1498; (4) violation of Plaintiff's substantive and procedural due process rights and taking without just compensation pursuant to the Fifth Amendment; and (5) misappropriation of trade secrets. 3d Am. Compl. ¶¶ 62-94.   Presently, due to the Court's prior rulings, only some of Plaintiff's patent infringement claims in Count Three remain.  See Demodulation, Inc. v. United States, 118 Fed. Cl. 69, 76 (2014) ("Demodulation I") (granting in part Defendant's motion to dismiss Count Four for lack of subject matter jurisdiction and motion for partial summary judgment with respect to Count Three); Demodulation, Inc. v. United States, 122 Fed. Cl. 652, 654-55 (2015) ("Demodulation II") (dismissing all of Plaintiff's trade secrets claims included in Counts One, Two, Four, and Five as a sanction for Plaintiff's counsel's willful violations of the Court's orders relating to the Government's discovery requests); Demodulation, Inc. v. United States, 123 Fed. Cl. 98, 104-05 (2015) ("Demodulation III") (granting Defendant's motion for partial summary judgment as to Plaintiff's breach of contract claim in Count One and finding moot Defendant's motion for summary judgment on the trade secrets claims in Count One, and all of the claims in Counts Two and Five).

In Count Three of its third amended complaint, Plaintiff alleges that the Government infringed on thirteen of Plaintiff's patents in violation of 28 U.S.C. § 1498.  3d Am. Compl. ¶¶ 79-86.  In Demodulation I, the Court held that twelve of the thirteen asserted patents had expired and granted the Government's motion for summary judgment as to any allegations of post-expiration use.  Demodulation I, 118 Fed. Cl. at 74-75.  In that opinion, the Court dismissed the thirteenth patent, U.S. Patent No. 6,270,591 ("the '591 Patent")[2], from the case after finding that Demodulation lacked ownership rights.  Id. at 76.  Thus, all that remains before the Court are Demodulation's claims for pre-expiration infringement on U.S. Patent Nos. 5,557,085 ("the '085 Patent"); 5,576,693 ("the '693 Patent"); 6,018,297 ("the '297 Patent"); 6,137,411 ("the '411 Patent"); 6,225,905 ("the '905 Patent"); 6,232,879 ("the '879 Patent"); 6,417,771 ("the '771 Patent"); 7,071,417 ("the '417 Patent"); 7,075,439 ("the '439 Patent"); 7,233,249 ("the '249 Patent"); 7,354,645 ("the '645 Patent"); and 7,368,166 ("the '166 Patent").

---

[1] The Clerk's Office of the Court transferred the case to Judge Wheeler on August 26, 2013.

[2] For purposes of convenience, it is common practice to "use the last three digits of the patent number to refer to a specific patent."  Federal Judicial Center, Anatomy of a Patent Case 3 (2d ed. 2012).

The asserted patents involve a highly specialized material consisting of glass-coated amorphous metal filament or wire, which Demodulation calls "microwire." 3d Am. Compl. ¶80. Specifically, the patents relate to the manufacture, detection, and manipulation of microwire.[3] Id. Microwire, which is purportedly thinner than a human hair, is particularly useful in electronic surveillance systems because it broadcasts a distinct signal when struck by radio frequency waves and thus, the signal may be detected from several kilometers away without the need for a physical connection. Demodulation III, 123 Fed. Cl. at 99. Demodulation seeks reasonable and entire compensation for the Government's alleged use or manufacture of inventions using microwire and covered by the twelve asserted patents. 3d Am. Compl. at ¶¶ 79-86; 28 U.S.C. § 1498(a).

Following the close of fact discovery on June 30, 2015, and after the Court dismissed all of Plaintiff's trade secret and breach of contract claims, the Court entered a scheduling order adopting the parties' Joint Proposed Schedule for Claim Construction ("Schedule").[4] Dkt. No. 171. Pursuant to the Schedule, Demodulation served the Government with its Disclosure of Asserted Claims and Infringement Contentions on November 19, 2015. Demodulation filed a similar, albeit much abbreviated disclosure with the Court on the same day. Dkt. No. 181. According to the terms of the Schedule, Demodulation's disclosure was to include, "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of the United States of which Plaintiff is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known." Schedule at 3.

On November 25, 2015, counsel for the Government informed counsel for Demodulation that the Government considered all of Demodulation's infringement contentions deficient. Shortly thereafter, the parties met and conferred telephonically. Gov't. Mot. at 5. During that conference, counsel for the United States outlined what the Government considered "key deficiencies" in Demodulation's infringement contentions. Id. Based on those deficiencies, the Government concluded that summary judgment was appropriate for all remaining patent claims. Id. at 5-6. On January 12, 2016, after Demodulation declined to withdraw its infringement claims, the Government filed a motion for summary judgment of noninfringement for all patents remaining in this litigation. Demodulation responded to the Government's motion on February 12, 2016. Along with its response, Demodulation filed a Motion for Leave to Amend its Disclosure of Asserted Claims and Contentions and/or Infringement Claim Charts. Dkt. Nos. 201-03. Included with Plaintiff's motion were no fewer than 1,000 pages of exhibits. Id. On

---

[3] Although the '085, '693, '297, '879, '771, and '166 Patents refer to both methods and devices, the inventions covered by these patents are actually either products or products by processes.

[4] The Schedule is based on the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California ("N.D. Cal. Patent Local Rules"). As the Schedule is based on the N.D. Cal. Patent Local Rules, the Court considers those rules, as well as the cases interpreting those rules, to be particularly relevant.

February 18, 2016, the Court issued an order staying all briefing and proceedings relating to claim construction until after resolution of the Government's motion for summary judgment.  The parties have now fully briefed the Government's motion for summary judgment of noninfringement, and the Court heard oral argument on March 16, 2016.

<u>Analysis</u>

A.  <u>Standard of Review</u>

    1.  <u>Jurisdiction</u>

The Court of Federal Claims possesses exclusive jurisdiction to entertain suits against the United States brought by an owner of a U.S. patent to recover reasonable and entire compensation for the use or manufacture "by or for the United States without license of the [patent] owner" of the "invention described in and covered" by the patent.  28 U.S.C. § 1498(a).  Under section 1498, the patent holder may recover "his reasonable and entire compensation for such use and manufacture."  <u>Id.</u>

    2.  <u>Summary Judgment of Noninfringement</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  RCFC 56(c). A fact is "material" if it might significantly alter the outcome of the case under the governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of showing that there exists no genuine dispute as to any material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Even when the movant does not bear the burden of proof on the issue that is the subject of the movant's motion for summary judgment, the moving party nevertheless must meet "the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a matter of law."  <u>Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.</u>, 200 F.3d 795, 806 (Fed. Cir. 1999). The moving party may meet its initial burden by showing an absence of proof as to an essential element of the nonmoving party's case because failure to prove "an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex</u>, 477 U.S. at 323.  Once the moving party meets its initial burden, the burden shifts to the nonmoving party who must then come forward with sufficient evidence to show that a genuine issue of material fact exists for trial.  <u>Crown Operations Int'l, Ltd. v. Solutia, Inc.</u>, 289 F.3d 1367, 1377 (Fed. Cir. 2002) (citing <u>Celotex</u>, 477 U.S. at 322-23).

A central purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ."  <u>Celotex</u>, 477 U.S. at 323-24.  While dismissal of factually unsupported claims is proper pursuant to Rule 56, "the purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial

when only one outcome can ensue." Vivid Techs., 200 F.3d at 806. To that end, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Patent infringement claims involve mixed questions of fact and law, Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S.Ct. 831, 837-42 (2015), but summary judgment of noninfringement nonetheless is proper when the moving party shows that "on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." TechSearch, LLC v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir. 2002); see also, Bus. Objects, S.A. v. Microstrategy, Inc., 393 F.3d 1366, 1371-72 (Fed. Cir. 2005). Determining a claim of patent infringement involves a two-step inquiry. Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 261 F.3d 1329, 1336 (Fed. Cir. 2001). First, the Court must construe the patent claims to define "the scope of the patentee's rights." Teva Pharm. USA, 135 S.Ct. 831, 835 (2015) (quoting Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996)). "Second, the claims, as construed, are compared to the accused device." Advanced Cardiovascular Sys., 261 F.3d at 1336 (citations omitted).

In patent cases, it can be "appropriate to construe the claims at issue with knowledge of the accused device as opposed to considering claim construction issues in the abstract." Iris Corp. Berhad v. United States, 84 Fed. Cl. 12, 16 (2008); see Exigent Tech., Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1310 n.10 (Fed. Cir. 2006) ("[I]t is appropriate for a court to consider the accused device when determining what aspect of the claim should be construed."). Nevertheless, although "it is convenient for the court to concentrate on those aspects of the claim[s] whose relation to the accused device [are] in dispute," the claim construction process "is independent of the device charged with infringement." Pall Corp. v. Hemasure Inc., 181 F.3d 1305, 1308 (Fed. Cir. 1999). However, even though the claim construction process is independent of the accused device, the ultimate purpose of construing the claims in a patent infringement action is to be able to compare them against the accused device to determine whether the accused device infringes on the asserted patent claims. In the end, in order for the plaintiff in a patent infringement action to prevail, "the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent . . . ." Advanced Cardiovascular Sys., 261 F.3d at 1336.

B.  The Asserted Patents

   1.  U.S. Patent No. '591

As indicated above, this Court has already dismissed the '591 Patent from this litigation. In Demodulation I, this Court held that Demodulation lacked ownership rights

to the '591 Patent and therefore, as a mere licensee, it did not have the right to sue for infringement.  Demodulation I, 118 Fed. Cl. at 75-76.  Why Plaintiff continues to assert this claim after the Court dismissed the '591 Patent with prejudice from this case is unknown.

>   2.   U.S. Patents Nos. '085, '693, '297, '411, '905, '879, 771, '417, '439, '249, '649, and '166

The Court finds that no genuine issue of material fact exists and therefore summary judgment for Defendant may be granted.   Specifically, summary judgment of noninfringement is appropriate for each of the asserted patents because Demodulation has failed to identify any accused infringing products.   Section 1498(a) contemplates reasonable and entire compensation for the Government's "use or manufacture" of the patented invention.  Accordingly, in order for Demodulation to prove infringement, it must identify a specific infringing product being used or manufactured by the Government. Plaintiff has not met this burden.  Demodulation filed its first complaint in this case over six years ago.  To date, and after more than two years in which fact discovery was available, Demodulation has failed to identify a single accused device that the Government has either used or manufactured to compare to the claims under any construction by this Court.

As shown below, Demodulation has provided the Court with expansive amounts of text, but when analyzed, the words simply are generic areas of technology lacking any detailed product information.   The following table includes the terms Plaintiff lists as accused "devices" or "products" in its infringement forms and claims chart:

| U.S. Patent No. | Accused "Products" |
| --- | --- |
| The '085 Patent | "Remote sensing devices"; "transponder units . . . ; e.g., passive radio frequency identification (RFID) tag"; "surface acoustic wave (SAW) devices"; "Magnetometers, Delay Line, Pulse Generators, Magnetic Torque/Tension Sensor, Magnetic Field, Current, Torque and Stress Sensors"; "field sensors . . . (e.g. U.S. Navy NUWC-Newport & Y-12 patents)"; "munitions guided systems"; "SPAWAR used in space applications"; "magnetic drive in gates or portals"; "drones"; "remote sensing devices that use an electronic identification device capable of using/generating a magnetic field for an interrogation zone; a radio frequency field to remotely interrogate the sensor (both electromagnetic fields) to transmit and receive the RF signal via the encoded identification data and transponder units (including all amorphous metal structures)." Pl.'s Disclosure at 2-7. "Patents generated by BWXT."  Pl.'s Disclosure, Ex. 2 at 1. |
| The '693 Patent | "Microwire Detection-Tracking-Sensor System"; "Electronic Label (Tag)"; "Label/Marker/Tag/Sensor"; "sensor/tracking components"; "sensor   platforms   including   plurality   of   wires   in   various |

| | |
|---|---|
| | configurations"; "Systems of detection . . . that utilize the electronic components defined in this patent"; "RFID Tag"; "a Magnetic sensor . . . (see NUWC Patents 7,405,559 and 8,686,715)"; "DOE Y-12 Patents 8,871,523 and 9,146,168." Pl.'s Disclosure at 7-10. "Microwire Detection-Tracking-Sensing System." Pl.'s Disclosure, Ex. 2 at 2. |
| The '297 Patent | "a multi-bit tag that provides the ability to track specific items for human or other asset tracking (cell phone, munitions, etc.)" Pl.'s Disclosure at 10-11. |
| The '411 Patent | "a remote sensing devices use an electronic identification device capable of creating a magnetic field for an interrogation zone"; "transponder units (such as glass-coated amorphous microwire or other device[)]"; "e.g. radio frequency identification (RFID) tag that is encoded with unique digital information (bits) representing a unique alpha-numeric sequence of information or item-specific information"; "controllers that are arranged to use information on the phase between demodulation to determine the position [of] a sensor in space"; "controllers operatively connected to devices for acoustic indication for sensor information data including position and displacement"; "detection systems using magnetic drive that are arranged parallel to the ground plane"; "amorphous metal wires tapes tags sensors markers . . . in the use of low observable technologies"; "coil arrangement in a frame with electrical conductors wrapped one or more turns"; "sensor deployment comprising an element of an amorphous magnetic material." Pl.'s Disclosure at 11-14. |
| The '905 Patent | "numerous systems that apply both radio frequency and magnetic capabilities set forth in this patent"; "[s]ensors, magnetometers, delay lines, tracking and tagging devices, undersea low observable technologies, apertures affixed to exterior surfaces, in situ remote sensing, condition monitoring, munitions, stealth, medical and others." Pl.'s Disclosure at 14-17. |
| The '879 Patent | "the remote sensing device's use [of] an electronic device capable of using/generating a magnetic field for an interrogation zone"; "transponder units (including all amorphous metal structures or other device[)] affected by both radio frequency (RF) and magnetic energy; e.g. passive radio frequency identification (RFID) tag that is encoded with unique digital information (bits) representing a unique alpha-numeric sequence of information or item-specific information"; "surface acoustic waves (SAW) devices"; "sensors for stress and explosive [d]etection/tracking"; "systems where the permeability of the metal alloy was influenced through a varying magnetic field"; "systems containing a wire shaped element that has an essentially circular cross section and is straight in a longitudinal direction of the |

| | |
|---|---|
| | element"; "a method of [d]etection of objects in an interrogation zone." Pl.'s Disclosure at 17-21. |
| The '771 Patent | "uses of [] an amorphous A method for remote detection of objects"; "systems that demodulate electromagnetic reply signals and detect frequency shift in the demodulated reply signal." Pl.'s Disclosure at 21-22. |
| The '417 Patent | "tracking, anti-counterfeiting and sensor devices"; "repeatable and stable sensor tags and devices for magnetic switching and domain excitation"; "optical emission scanners . . . for anti-counterfeiting application." Pl.'s Disclosure at 22-25. |
| The '439 Patent | "sensor platforms"; "material on the surface of amorphous metal sensor elements that expansion contraction properties acted like as a heat shrinkable material, to alter the state of a sensor element." Pl.'s Disclosure at 25-26. |
| The '249 Patent | "sensors, tracking devices and anti-counterfeiting devices deploying at minimum one bit of encoding information"; "sensor elements"; "computer interface systems with labview signal processing capability"; "amorphous metal wires, nanocrystalline and amorphous, wires having the glass coatings removed"; "condition monitoring devices"; "strain, torque, tension sensors"; "energy harvesting devices"; "optical fiber applications; such as security, condition monitoring and the monitoring of data flows and speed"; "information data emitting from encoded amorphous metal elements"; "amorphous metal wire"; "sensor systems at BWTX." Pl.'s Disclosure at 26-29. "sensor systems at DOE's Y-12 Plant." Pl.'s Disclosure, Ex. 2 at 9. |
| The '645 Patent | "microwires"; "sensor systems"; "[p]roducts [] described in BWTX patents and publications"; "microwire products including different metal compositions"; "new and specialized composite wires"; "the elastic modulus for [g]lass coated amorphous metal"; "microwire in structural, electronic, reflection and absorption of EM energy for aerospace applications by the US Government"; "[a]morphous metals . . . used as radar absorption material such as chaff and 'Foo Foo dust'"; "glass coated microwire with glass composed of glass is a soda-lime silicate container glass." Pl.'s Disclosure at 29-31. |
| The '166 Patent | "development use and licensing of [U.S.] patent for chemical/biological species for the detection of explosives detection devices (US 8871523)"; "application of polymers, reagents or other material on surfaces of microwires and/or the use of microwire properties are influenced by either thermal expansion, chemical reaction or applied stress/deflection." Pl.'s Disclosure at 31-33. |

As the preceding chart illustrates, even the most specific accused "devices" Demodulation identifies are merely broad technology categories such as "sensors," "magnetometers," "tracking and tagging devices," and "apertures affixed to exterior surfaces." Pl.'s Disclosure at 15 (regarding infringement contentions for Claim One of the '905 Patent). These broad categories potentially include thousands of devices and offer little or no notice to the Government as to what actual device Demodulation contends infringes any of its patent claims. Demodulation also lists various U.S. patents, including patents held by the Naval Undersea Warfare Center ("NUWC") and the Department of Energy ("DOE"), as accused infringing products. Pl.'s Disclosures at 10 (regarding infringement contentions for Claims Four and Five of the '693 Patent, respectively). However, Plaintiff has not come forward with a device that it claims embodies any of these patents, nor has it argued that any of these patents are invalid in view of its asserted claims. Indeed the existence of a patent is no guarantee of the existence of a corresponding product, let alone one made or used by the United States. As "[a] patent shall be presumed valid," 35 U.S.C. § 282, and in the absence of any identification of an actual accused device, Plaintiff's mere references to patents held by the Government do not amount to identification of an accused device.

Although courts generally construe the claims of an asserted patent prior to considering the ultimate issue of whether the accused device infringes the asserted patent claims, there is no requirement for this Court to conduct a <u>Markman</u> hearing to construe claims prior to considering the Government's motion for summary judgment. This is particularly true where, as here, Demodulation has no intelligible infringement position under any construction of any of its asserted patents' claims. In fact, this Court need only construe the claims "to the extent necessary to resolve the controversy." <u>Vivid Techs.</u>, 200 F.3d at 803; <u>see</u> <u>also</u> <u>Biovail Corp. Int'l v. Andrx Pharms., Inc.</u>, 239 F.3d 1297, 1301 (Fed. Cir. 2001) (finding it unnecessary to construe a claim term where it was not relevant to the case's outcome); <u>Ballard Med. Prods. v. Allegiance Healthcare Corp.</u>, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all other issues presented by the parties."). Here, the Court need not construe any of the claims in Plaintiff's asserted patents because without an accused product, Plaintiff cannot prove infringement as a matter of fact under any claim construction. Accordingly, to proceed with a <u>Markman</u> hearing in the absence of a single, identifiable accused product—after Plaintiff has been afforded years of discovery—would be a waste of judicial resources.

The identification of an accused product is a necessary element in an action for patent infringement. For Demodulation to prevail in this litigation, it "must establish by a preponderance of the evidence that [an] accused device infringes one or more claims of the patent . . . ." <u>Advanced Cardiovascular Sys.</u>, 261 F.3d at 1336. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Ultimately, no matter how the

claims might be construed, there can be no infringement as a matter of law when Plaintiff has failed to identify an accused product. See Bender v. Motorola, Inc., No. 09-1245, 2010 WL 726739, *3-*4 (N.D. Cal. Feb. 26, 2010); Lyda v. CBS Corp., No. 14-6572, 2-15 WL 4393120, *4 (S.D.N.Y. July 16, 2015).   After six years of litigation, Demodulation has failed to make a showing sufficient to establish the existence of an actual accused product, an essential element to its case.  Accordingly, summary judgment must be granted in favor of the Government.

### 3. Demodulation's Motion to Amend

According to the Schedule, amendments to Plaintiff's infringement contentions "may be made only by order of the Court in accordance with law."  Schedule at 8.  In this case, Demodulation agrees that relevant law requires it to make a timely showing of good cause to amend its infringement contentions or claim chart.  Pl.'s Mot. at 12-13; see N.D. Cal. Local Patent Rule 3-6 ("Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause.").   In determining whether good cause exists, a court must first consider whether the movant was diligent in moving to amend and if so, whether the nonmoving party would suffer prejudice if the court were to allow amendment.   See O$_2$ Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 467 F.3d 1355, 1366-68 (Fed. Cir. 2006); Canvs. Corp. v. U.S., 107 Fed. Cl. 100, 103-04 (2012); Acer, Inc. v. Tech. Props. Ltd., Nos. 08-cv-00882JF/HRL et al., 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) (unpublished).

Here, the Court deems it unnecessary to decide whether Plaintiff has shown good cause in moving to amend its infringement contentions and claim chart.  Although it is not the Court's obligation to "scour through the exhibits to the Contentions to determine whether any might be properly authenticated and create a genuine issue of material fact," the Court has nevertheless done so in this case.  Nomadix, Inc. v. Hewlett-Packard Co., 838 F. Supp. 2d 962, 966 (C.D. Cal. 2012).  In the more than 1,000 pages of exhibits Plaintiff filed with its motion to amend, the Court found seven "Product Descriptions."  As in the product descriptions identified in Plaintiff's infringement contentions, the product descriptions in its motion to amend fail to identify a single accused device.  Instead, as in its infringement contentions, Demodulation once again merely refers to large technology categories and patents held by the Government.

The following table includes the terms Plaintiff lists as accused "devices" or "products" in its motion to amend:

| Exhibit 1-1 | **US Army Munitions Guidance Sensor & Detonation Trigger** |
|---|---|
| | "microwire and radio frequency methods to enhance the telemetric control of munitions including precision guided munitions"; "microwire as a track, trace and 'switch' mechanism to remotely detonate weapons by a |

| | |
|---|---|
| | return radio frequency signal"; "US Navy Patents 7,405,559; 8,686,715 and 8,231,161" |
| Exhibit 1-2 | **DoD – Asset (Munitions, Nuclear Weapons, Terrorists (IFF) ["identity friend-foe"]) Track & Trace with Fixed Encryption Key**<br>"a clandestine, electronic key (e.g. magnetic transducer – microwire) for over-the-air track and trace transmission and device authentication" |
| Exhibit 1-3 | **US Gov – Passive RFID Asset Track & Trace**<br>"overt, electronic key, e.g. magnetic tranducer – passive – RFID (Radio Frequency Identification) tag, NFC (Near-Field Communication) Tags, etc. for over-the-air track and trace transmission and device authentication for conventional assets"; "Passive RFID system, which already has software to identify a target[] based on the target's specific digital signal on the RF response, with a simple included software" |
| Exhibit 1-4 | **DoD – Asset (Munitions, Nuclear Weapons, Terrorists (IFF) ["identity friend-foe"]) Track & Trace with Fixed Encryption Key**<br>"a clandestine, electronic key (e.g. magnetic transducer – microwire) for over-the-air track and trace transmission and device authentication"; |
| Exhibit 1-5 | **NSA ANT Catalog – Retro-Reflective Passive Signal Acquisition Device with Fixed Identification Key for USB and other Data Cables**<br>"a clandestine, electronic key (e.g. magnetic transducer – microwire) for over-the-air retro-reflection of data signals on a cable plus device authentication to tie said cable to a specific user"; "RF [radio frequency] Transmit/Receive device [that] is a CW [continuous wave] Radar unit"; "[f]or Retro-Reflective ANT Products such as LOUDAUTO, TAWDRYYWARD RANGEMASTER & SURLYSPAWN (circa 2008 Product Names), current improved products will include an encoded transponder (e.g. microwire) implanted into or on the data wires" |
| Exhibit 1-6 | **NSA ANT Catalog – USB/Ethernet Connector**<br>"a clandestine, electronic key (e.g. magnetic transducer – microwire) for over-the-air track and trace transmission and device authentication"; "[f]or USB ANT Products such as COTTONMOUTH I, COTTONMOUTH II, COTTONMOUTH III, FIREWALK (circa 2008), current products will include an encoded transponder (e.g. microwire) implanted into or on the SIM Card that is incorporated as part of the circuit board of the connector" |
| Exhibit 1-7 | **NSA ANT Catalog – Cell Phone, Track & Trace with Fixed Encryption Key for Personal Wireless Device**<br>"a clandestine, electronic key (e.g. magnetic transducer – microwire) for over-the-air track and trace transmission and device authentication"; "[f]or Cell Phone ANT Products such as DROPOUTJEEP, GOPHERSET, MONKEY CALENDAR, TOTECHASER, TOTEGHOSTLY, & PICASSO (circa 2008), current products will |

| | include an encoded transponder (e.g. microwire) implanted into or on the SIM Card" |

As with the terms described in Plaintiff's initial disclosures, none of these "device" descriptions is sufficiently specific to provide the Government with notice as to how a product it is using or manufacturing infringes on Plaintiff's patents. See K-Tech Telecommc'ns, Inc. v. TimeWarner Cable, Inc., 714 F.3d 1277, 1284 (Fed Cir. 2013) (recognizing that "a potential infringer [must] be placed on notice of what activity or device is being accused of infringement"); Gharb v. Mitsubishi Elec. Automation, Inc., No. 10-07204, 2012 WL 1986435, *4 (N.D. Ill. June 4, 2012).  At its most specific, Plaintiff identifies "circa 2008" product models apparently taken from a National Security Agency ("NSA") catalogue as examples of products that in their "current" form would infringe on its patents by including microwire.  Pl.'s Mot. to Am., Exs. 1-5 - 1-7.  Like the vague and overly broad device descriptions included in Plaintiff's initial and amended charts, the conjectural and hypothetical NSA products described in Plaintiff's amended claim chart fail to provide sufficient notice to the Government or to identify an actual accused product with which this Court could compare properly construed patent claims.  Accordingly, even if the Court were to allow Plaintiff to amend its claim chart, it would nevertheless fail to meet its burden.  Plaintiff has failed to identify any accused device under any construction that provides a foundation for a patent infringement lawsuit.   As "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," further proceedings in this case are not warranted.  Celotex, 477 U.S. at 323.

Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment of noninfringement as to all the asserted patents and claims remaining in this litigation.  Plaintiff's motion to amend its infringement contentions and claim chart is DENIED AS MOOT.

The Clerk of Court shall enter judgment in favor of the Defendant.  Reasonable costs are awarded to Defendant.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge